# EXHIBIT 6



**OFFICE OF THE ARIZONA ATTORNEY GENERAL**

**STATE OF ARIZONA**

October 24, 2025

***VIA EMAIL***

The Honorable Brooke Rollins
Secretary, U.S. Department of Agriculture

c/o Ronald Ward
Acting Associate Administrator
Supplemental Nutrition Assistance Program
Food and Nutrition Service
U.S. Department of Agriculture
Ronald.Ward@fns.usda.gov

Re:    USDA/FNS's Directive to "Hold" November SNAP Benefits

Dear Madam Secretary:

      We write in regard to your October 10, 2025 letter to "All State Agencies" and State Agency Directors that administer the Supplemental Nutrition Assistance (SNAP) Program. The letter stated that "if the current lapse in appropriations continues, there will be insufficient funds to pay full November SNAP benefits for approximately 42 million individuals across the Nation." It also "direct[ed] States to hold their November issuance files and delay transmission to State EBT vendors until further notice," including "on-going SNAP benefits and daily files."

      To comply with USDA's directive, States have already taken steps to delay the issuance of November benefits, which will significantly harm millions of people who depend on SNAP to put food on the table, including children, seniors, veterans, disabled persons, and other vulnerable individuals struggling to meet their basic food needs. The number of people affected, and the length of that delay, will grow each day that issuance files do not go out. According to USDA's letter, as of October 10, the agency had just "begun the process of fact finding and information gathering to be prepared in case a contingency plan must be implemented." Two weeks later, it is clear that a contingency plan is urgently needed, but our agencies have yet to receive any update from USDA.

      We write, therefore, to request further clarification and information from USDA about (1) how it determined this action was necessary, and (2) its "contingency plan" to ensure benefits are issued to the maximum extent possible during the federal government shutdown.

## I. The legal basis for, and implications of, USDA's directive are unclear.

Congress delegated significant authority and responsibility to States to administer SNAP and ensure efficient and timely issuance of benefits to eligible applicants. *See, e.g.*, 7 U.S.C. § 2020(e)(3) (state plan of operation must include provision that the State agency will "promptly determine the eligibility of each applicant household" within 30 days); *see also* 7 C.F.R. § 276.1(a)(4) ("State agencies shall be responsible for efficiently and effectively administering the Program by complying with the provisions of the Act, the regulations issued pursuant to the Act, and the FNS–approved State Plan of Operation."). Moreover, the SNAP Act provides that "[a]ssistance under [SNAP] shall be furnished to all eligible households who make application for such participation." 7 U.S.C. § 2014(a).

USDA's October 10 letter is in considerable tension with Congress's directives. While styled as a "Benefit and Administrative Expense Update for November 2025," the letter—without citing any legal authority or providing any reasoning—prohibits States from sending already-calculated November allotments to their EBT vendors for processing, as States normally would do. And because many States must send the necessary files to their vendors several days before the start of the month, complying with the October 10 letter has already guaranteed that November benefits will be delayed for many SNAP recipients that live in States with deadlines that have already passed. For other States, those deadlines are fast approaching in the next few days.

The October 10 letter also stated that USDA lacks "[]sufficient funds to pay full November SNAP benefits." However, Congress appropriated $6 billion (and perhaps more) to USDA in contingency reserve funds for SNAP. *See* P.L. 118-42 (FFY 2024 funding available through FFY 2026); P.L. 119-4 (FFY 2025 funding available through FFY 2027). Moreover, we understand that Section 32 funds are available to USDA, and can be used to fund SNAP benefits during the shutdown. *See* 7 U.S.C. § 612(c) (making Section 32 funds for child nutrition); 7 U.S.C. § 2257 (Secretary's transfer authority). Indeed, the agency has reportedly already used Section 32 funds to ensure the continuation of benefits under the Special Supplemental Nutrition Program for Women, Infants, and Children (WIC). If, as it appears, contingency funds and other appropriations remain available, USDA should surely use those funds to continue providing SNAP benefits, rather than effectively suspending all SNAP benefits by summarily ordering States to "hold" already-calculated November allotments.

Our understanding is informed by USDA's own statements. Just one month ago—and in anticipation of a possible shutdown—USDA recognized that "Congressional intent is evident that SNAP's operations should continue since the program has been provided with multi-year contingency funds that can be used for State Administrative Expenses," and that "multi-year contingency funds are also available to fund participant benefits in the event that a lapse occurs."[1]

To be sure, 7 U.S.C. § 2027 and related regulations provide a process for reducing, suspending, or canceling benefits when an existing appropriation falls short of requirements for a particular year. But USDA's October 10 letter does not specify that these requirements have been met. In particular, rather than reducing November allotments consistent with statutory criteria, *see* 7 U.S.C. § 2027(b)-(d), and requiring States to recalculate their files accordingly, USDA directed

---

[1] *Lapse of Funding Plan* at 15, USDA (Sept. 30, 2025).

States to simply ignore the already-calculated November files altogether and effectively suspend SNAP benefits indefinitely.

Likewise, although the regulations appear to allow USDA to "suspend[] or cancel[]" allotments, that authority is limited to when suspension or cancellation is "necessary" in order "to comply with section 18 of the Food and Nutrition Act of 2008," and such action must still comply with the statutory and regulatory processes. 7 C.F.R. § 271.7(a)-(c). The October 10 letter does not acknowledge those limitations, nor does it clearly explain whether the ordered "hold" of November files is a suspension or cancellation, or, assuming that it is, how USDA determined that suspension or cancellation of benefits, versus a reduction in benefits, is needed under the circumstances.

## II.   USDA's directive to "hold" November files will harm millions of Americans.

This directive promises significant hardship for the 42 million Americans who currently depend on SNAP to feed themselves and their families. Even a temporary delay in the issuance of benefits, which now appears inevitable due to USDA's directive, will have devastating effects on the American public. Those affected by USDA's unexplained "hold" include some of our Nation's most vulnerable populations. For example, in FY 2023, children—from babies to 17 years old—comprised nearly 39% of SNAP recipients, and adults aged 60 and older made up nearly 20%.[2]

Further, a significant number of veterans live in households that depend on SNAP for their nutrition needs. USDA has estimated that 1.174 million veterans nationwide received SNAP benefits between 2018-2019, including, for example:[3]

- 28,498 veterans in Arizona;
- 39,517 in Michigan;
- 84,931 in California;
- 62,061 in Pennsylvania;
- 107,606 in Florida;
- 93,261 in Texas;
- 44,192 in Georgia; and
- 13,976 in New Jersey.

Consistent access to nutrition has been a persistent problem for the veteran population. According to USDA, an estimated 11% "of working-age veterans—between the ages of 18 and 64—lived in … households" that experienced "limited or uncertain access to adequate food" between 2015 to 2019.[4] During that same period, an additional 5% of "working-age veterans lived

---

[2] *SNAP Key Statistics and Research – Distribution of SNAP participants by age, fiscal year 2023* (Chart), USDA Econ. Rsch. Serv., https://www.ers.usda.gov/topics/food-nutrition-assistance/supplemental-nutrition-assistance-program-snap/key-statistics-and-research (last visited Oct. 24, 2025).

[3] *Veterans Receiving SNAP Benefits by State 2018-2019 Average*, USDA Food & Nutrition Serv. (2021) https://fns-prod.azureedge.us/sites/default/files/resource-files/SNAP-veteran-benefits-by-state.pdf.

[4] *Nutrition Assistance Programs: Federal Agencies Should Improve Oversight & Better Collaborate on Efforts to Support Veterans with Food Insecurity*, at PDF 1-2, GAO Report to Congressional Requesters

in households [where] the food intake of some household members [was] reduced and normal eating patterns [were] disrupted because of limited resources."[5]  Thus, SNAP remains a critical program for veterans and their families.

These figures represent only a small snapshot of the millions of individuals and families who will imminently suffer the consequences of USDA's current directive to States.

### III.    States and SNAP recipients need additional information and clarity.

In light of these concerns, we ask USDA to provide the following information no later than the end of day Monday, October 27, 2025.

- Does USDA/FNS have contingency funds left over from prior Congressional appropriations?  If so, what is the total of those contingency funds?

- Does USDA/FNS have access to any other sources of available funds to pay benefits and administrative costs associated with issuing those benefits?

- Does USDA/FNS intend to use such funds to furnish SNAP benefits, even at a reduced level?  If not, why not?  And if so, how does the agency intend to execute that plan, and when would States be expected to send their benefit issuance files?

- Assuming USDA/FNS has contingency funds, on what grounds did the agency direct States to "hold" November files, rather than reducing allotments consistent with available funds?

- Should States treat the October 10 letter as a "suspension" of benefits or a "cancellation" of benefits under 7 C.F.R. § 271.7, or neither?

Our States stand ready to work with USDA to mitigate the impact of the shutdown on the public.  And, to be clear, although we have significant concerns about the necessity and lawfulness of USDA's directive, our agencies are complying with that directive to delay sending benefit files to our EBT vendors until further notice.

Nonetheless, USDA's actions raise important questions, and our agencies and residents are entitled to answers about USDA's plans for moving forward during the shutdown.  We look forward to your response.

---

(Mar. 2022), https://www.gao.gov/assets/d22104740.pdf.

[5] *Id.*

October 24, 2025
Page 5 of 7

Sincerely,

Kristin K. Mayes
Arizona Attorney General

Rob Bonta
California Attorney General

Philip J. Weiser
Colorado Attorney General

Anne E. Lopez
Hawaiʻi Attorney General

William Tong
Connecticut Attorney General

Kwame Raoul
Illinois Attorney General

Kathleen Jennings
Delaware Attorney General

Aaron M. Frey
Maine Attorney General

Brian L. Schwalb
District of Columbia Attorney General

Anthony G. Brown
Maryland Attorney General

Andrea Joy Campbell
Massachusetts Attorney General

Raúl Torrez
New Mexico Attorney General

Dana Nessel
Michigan Attorney General

Letitia James
New York Attorney General

Keith Ellison
Minnesota Attorney General

Jeff Jackson
North Carolina Attorney General

Aaron D. Ford
Nevada Attorney General

Dan Rayfield
Oregon Attorney General

Matthew J. Platkin
New Jersey Attorney General

Peter F. Neronha
Rhode Island Attorney General

October 24, 2025
Page 7 of 7

Charity R. Clark
Vermont Attorney General

Joshua Kaul
Wisconsin Attorney General

Nick Brown
Washington Attorney General