EXHIBIT 38

**<u>DECLARATION OF KIMBERLY MEROLLA-BRITO, DIRECTOR</u>**
**<u>RHODE ISLAND DEPARTMENT OF HUMAN SERVICES</u>**

I, Kimberly Merolla-Brito, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am employed within the State of Rhode Island as Director of the Rhode Island Department of Human Services. I am over the age of 18 and understand the obligations of an oath. I am over the age of 18 and understand the obligations of an oath.

**<u>Professional and Agency Background</u>**

2.      I am the Director of the Rhode Island Department of Human Services ("RIDHS" or the "Department") and have held this position since June 2022.  My educational background includes a Master of Social Work and a Bachelor of Social Work, both from Rhode Island College.  Prior to my current role, I served as the Deputy Director of Policy and Operations at RIDHS from 2017 to 2022, overseeing agency operations, policy initiatives, and staff development. From 2015 to 2017, I was the Associate Director of Policy and Operations, leading policy planning and quality control efforts. Between 2009 and 2015, I served as Administrator of Policy and Research, contributing to the development of the Unified Health Infrastructure Project. I began my state service in 1998 as a social caseworker at the R.I. Department of Children, Youth & Families, where I cultivated my clinical and public service expertise.  In addition to my professional experience, I am a Licensed Independent Clinical Social Worker and continue to be engaged in community service through board memberships and leadership development initiatives.

3.      I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

4.       The R.I. Department of Human Services is a Rhode Island State Executive branch agency that delivers critical benefits, supports and services to more than 300,000 families, adults, children, older adults, individuals with disabilities and veterans every year.  These programs include but are not limited to the Supplemental Nutrition Assistance Program ("SNAP"), Temporary Assistance for Needy Families-Rhode Island Works, Child Care Assistance Program, determining eligibility for Medicaid, and Long-Term Support Services.  Through these programs, RIDHS strives to ensure families are strong, productive, healthy, and independent, so that adults are healthy and reach their maximum potential, children are safe, healthy, ready to learn and reach their full potential, Child Care providers deliver high quality education services, older adults, seniors and individuals with disabilities receive all necessary services to enhance their quality of life, and Veterans are cared for and honored.

5.       RIDHS is the single State agency, within Rhode Island, that administers SNAP, which issues monthly electronic benefits that can be used to purchase food at authorized retail stores.

**SNAP in Rhode Island**

6.       SNAP is a key part of Rhode Island's efforts to address hunger by supplementing the food budget of low-income families so they can purchase healthy food. Thus far in 2025, an average of 141,747 people received SNAP benefits in Rhode Island each month, including approximately 22,723 families and 43,460 children. Households in Rhode Island receive on average $321.00 per month in SNAP benefits to meet their basic subsistence and nutritional needs. During the federal fiscal year between October 1, 2024 and September 30, 2025, RIDHS issued approximately $29,000,000 per month in SNAP benefits in Rhode Island.

7.       RIDH administers the SNAP program in Rhode Island pursuant to R.I. General Laws § 40-6-1 *et seq*. Pursuant to federal law, RIDHS administers SNAP on behalf of the United States Department of Agriculture (USDA) and is responsible for the issuance, control, and accountability of SNAP benefits and Electronic Benefit Transaction ("EBT") cards; ensuring program integrity; and supervising local transitional assistance offices' day-to-day administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households. 7 U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2. USDA funds the entirety of SNAP benefits in Rhode Island, though Rhode Island and the federal government split administrative costs. 7 U.S.C. § 2025(a).

8.       For Federal Fiscal Year 2025, RIDHS budgeted approximately $19.1 million in state funds to pay for SNAP administration. This spending is expected to generate approximately $23.9 in SNAP federal financial participation, to cover half of anticipated administration costs.

**USDA's Lapse of Appropriation Funding and Demand to Withhold Benefit Data**

9.       RIDHS has a contract with a financial services vendor, Fidelity National Information Services ("FIS" or "Vendor"), to provide to provide EBT processing services for SNAP and other state-funded RIDHS programs. These services include processing benefit authorizations provided by RIDHS; managing the accounts through which those benefits are made available to recipients; and processing the financial transactions that transmit payments to retailers that accept payments from those accounts.

10.       The Vendor's invoices for its services rendered under its contract with RIDHS are paid by Rhode Island. Each month, RIDHS's Vendor, on behalf of Rhode Island and USDA, loads the full value of each household's monthly SNAP benefit allotment into the household's

account. The household members access their account by using their EBT card to purchase food in a similar manner to the way one uses a debit card.

11.    As part of the SNAP administration process, RIDHS is required to regularly transmit various types of electronic benefit issuance data files ("benefit files") to its Vendor. These benefit files contain information related to individuals who have been determined eligible for SNAP benefits, and the benefit level for that/those individual(s), alongside other information. RIDHS sends multiple benefit files to the Vendor, including monthly files for active SNAP recipients. Further, RIDHS sends benefit files for SNAP recipients newly approved that month, a subset of which are individuals who have been approved for expedited SNAP benefits.

12.    RIDHS uses an in-house case management system called RI Bridges to generate benefit files, among many other functions.

13.    Once the Vendor receives the benefit files RIDHS, the Vendor uses that information to authorize benefits for SNAP recipients and to subsequently load the approved monthly SNAP benefit allotment on SNAP recipients' individual EBT cards. Recipients can then use their individual EBT cards to purchase food, as of the benefit availability date, at authorized SNAP retailers.

14.    U.S. Department of Agriculture's Food and Nutrition Service ("USDA-FNS") manages the process of certifying retailers for participation in the SNAP program. SNAP recipients can only use their EBT card at approved retailers.

15.    When SNAP recipients use their EBT card at a retailer's point of sale machine, an electronic message goes from the retailer's cash register to the Vendor to verify a variety of conditions including the availability of funds, and if sufficient funds are available. If the purchase is approved, the customer's EBT account is immediately debited and the retailer's

4

account gets credited. Neither RIDHS nor any other state agency in Rhode Island ever receives SNAP benefit funds as part of this process.

16.    In accordance with this process, RIDHS transmits hundreds of benefit files a month to its Vendor pursuant to a preset, contractual transmission schedule.

17.    RIDHS requires lead time to process SNAP benefits prior to the month in which the benefits will be issued. RIDHS runs the State's monthly SNAP issuance batch files once per month.  These monthly SNAP issuance batch files are run four (4) days before the end of the month for the issuance to be available, on a customer's EBT card, the first day of the following month.

18.    In addition to the cyclical monthly benefit issuance process outlined above, RIDHS also follows a schedule for submitting other benefit files related to SNAP, including daily benefit files, which contain benefits issued for expedited applications, transportation-specific funds for participants in the SNAP work program, and other ancillary benefit types. In addition, when an agency approves a household for expedited SNAP benefits after the 15th of a month, the agency has discretion to approve not only the prorated amount of benefits for the month of eligibility, but also benefits for the following month. When processing benefit allotments at the end of a calendar month, RIDHS thus issues, In part, benefits that are allotted for both the month in which the benefit files are submitted *and* the subsequent incoming month.

19.    If RIDHS fails to send benefit files to the Vendor timely by the agreed upon schedule, delivery of benefits to individual households will be delayed.

20.    On October 24, 2025, RIDHS received a letter from USDA, purporting to formally suspend November SNAP benefits. Furthermore, the letter informed Rhode Island that if the State proceeds with SNAP issuances using State funds, it is USDA's belief that states are

liable for these funds without any guarantee of federal reimbursement. More specifically, the notice states "[t]here is no provision or allowance under current law for States to cover the cost of benefits and be reimbursed."

21.     On September 30, 2025, USDA released a "Lapse of Funding Plan[,]" stating that such a plan was required by the Office of Management and Budget to outline the approach to follow "for agency operations in the absence of appropriations." U.S. Dep't of Agric., Lapse of Funding Plan (2025), at 4, previously available at https://www.usda.gov/sites/default/files/documents/fy2026-usda-lapse-plan.pdf. The plan stated that "there is a bona fide need to obligate benefits for October . . . thereby guaranteeing that benefit funds are available for program operations even in the event of a government shutdown at the beginning of a fiscal year." *Id.* at 15. The plan further stated that "Congressional intent is evident that SNAP's operations should continue since the program has been provided with multi-year contingency funds" that are "available to fund participant benefits in the event that a lapse occurs in the middle of the fiscal year." *Id.*

22.     On October 10, 2025, less than two weeks after the USDA Lapse of Funding Plan was released, the USDA-FNS Acting Associate Administrator Ronald Ward sent Rhode Island a letter addressed to all SNAP State Agency Directors of all State Agencies as well as Regional SNAP Directors of all regions. The October 10 letter stated that "if the current lapse in appropriations continues, there will be insufficient funds to pay full November SNAP benefits for approximately 42 million individuals across the Nation." The letter further stated that the USDA "has begun the process of fact finding and information gathering to be prepared in case a contingency plan must be implemented." USDA also indicated that it "[understood] that several States would normally begin sending November benefit issuance files to their [EBT] vendors

soon." Noting "the operational issues and constraints that exist in automated systems, and in the interest of preserving maximum flexibility," the letter indicated that USDA was "forced to direct States to hold their November issuance files and delay transmission to State EBT vendors until further notice." The letter further demanded that the States also hold "on-going SNAP benefits and daily files."

23. Due to the Vendor's data submission schedule for Rhode Island, RIDHS faces the threat of benefit interruption as early as November 1, 2025. Each day in which RIDHS is delayed from submitting benefit files results in continued benefit interruption and statewide food insecurity for some of the most vulnerable residents of the Rhode Island.

24. Failure to issue SNAP benefits to qualified recipients in Rhode Island will lead to immediate food insecurity for approximately 140,000people in the Rhode Island and unprecedented reliance on already overwhelmed food banks that will simply not be able to meet the significant surge in demand. SNAP is the largest anti-hunger program in the Rhode Island. As a result, the sudden lack of benefits for otherwise eligible individuals and families in SNAP will have devastating consequences on the public health of the Rhode Island and downstream effects on the safety net programs that currently fill needs that SNAP does not cover.

25. The uncertainty of whether SNAP benefits will continue during this shutdown creates food insecurity for SNAP beneficiaries by threatening their reliable access to food and forcing them to start rationing what are already subsistence-level benefits. Any disruption in SNAP benefits will force families to scramble for alternatives, including possibly going into debt or skipping meals entirely.

26. SNAP is also an economic driver for Rhode Island local businesses. 955 merchants in Rhode Island accept SNAP benefits for food purchases. If thousands of Rhode

Island residents are forced to cut back on food spending at once, this will immediately and drastically affect the economic well-being of vendors, farmers, and stores across Rhode Island. Rhode Island retailers redeemed approximately $370,590,580 in SNAP benefits with $348,000,000 annually flowing into Rhode Island businesses from SNAP transactions. The USDA Economic Research Service (ERS) estimates for every $1 spent in SNAP spending, $1.54 in economic activity is generated in Rhode Island. From 2007 to 2023, Farm Fresh Rhode Island $5,133,390 the local economy through Farmers Markets.

**Fiscal Impacts on the State from the Unavailability of SNAP Benefits**

27.    The loss of SNAP benefits funding would have a significant fiscal impact on the Rhode Island.

28.    The loss of SNAP benefits will result in greater need and requests for state-funded assistance programs, including, for example, state-funded nutrition access programs similar to SNAP.

29.    Households losing access to SNAP benefits often experience increased reliance on emergency services, such as food pantries, homeless shelters, and crisis intervention programs, straining community resources that are not designed to meet sustained demand. Health outcomes would likely deteriorate, as reduced access to nutritious food exacerbates chronic conditions like diabetes, hypertension, and obesity, leading to higher utilization of costly emergency room care. This can also drive greater dependence on other public safety net programs, such as General Public Assistance, Medicaid, and child welfare services, thereby increasing state and local expenditures. The erosion of household stability caused by food insecurity can also have public health and public safety consequences, including greater incidence of communicable diseases, higher rates of mental health crises, and increased

8

involvement of vulnerable populations with law enforcement. Collectively, these effects would undermine Rhode Island's public health infrastructure and shift costs to state and municipal systems, further compounding the fiscal and social impact of loss of SNAP benefits.

30.    RIDHS does not have the fiscal resources available to replace federally funded SNAP benefits with state-funded equivalent benefits. I am informed and believe that Rhode Island also does not have the fiscal resources available to replace federally funded SNAP benefits with state-funded equivalent benefits.

**Administrative and Operational Burdens on the RIDHS**

31.    The actions to suspend the availability of SNAP benefits for November 2025 would significantly erode trust between the Rhode Island and its residents built over many years and through the dedication of significant resources.

32.    To properly effectuate its safety net programs, RIDHS has devoted years of work to overcome stigma, misinformation, and other barriers to access. RIDHS is the representative of the broader SNAP framework to Rhode Island residents: if households experience delays in receiving crucial benefits, they are likely to feel that RIDHS has failed or engaged in wrongdoing. RIDHS has fostered trust with Rhode Island residents and stakeholders by representing to them that SNAP eligibility and compliance with programmatic requirements will lead to timely benefits issuance. SNAP benefits directly fund one of the most crucial basic human needs: access to food. Failure to deliver on that basic need as promised is a deep violation of residents' trust.

33.    Furthermore, loss of trust among Rhode Island residents will likely lead to decreased SNAP enrollments, which in turn will cause irreparable long-term harm and costs to the State in the form of increased healthcare and safety net costs, and expending of resources to

rebuild trust in the public agency. USDA-FNS has acted in disregard of those reliance interests of the Rhode Island.

34.    The actions to suspend the availability of SNAP benefits for November 2025 also unduly burdens RIDHS's already limited administrative resources.

35.    Once the current government shutdown began, USDA on October 1, 2025 sent RIDHS a letter regarding the lapse in regular appropriations, stating that "SNAP eligible households will receive monthly benefits for October" and that "funding is available for State administrative expenses (SAE) for October."  The letter directed state agencies to "continue to administer the program in accordance with Federal statute and regulations."

36.    RIDHS continued its normal operations, including processing new applications and preparing benefit issuance files for November benefits, through October, in part due to the representations in the USDA's October 1, 2025.

37.    Further, because USDA indicated in the October 10, 2025 letter that RIDHS is to hold these benefit files "until further notice[,]" RIDHS must prepare for SNAP benefit interruptions for an indefinite period of time. A disruption of any length would burden RIDHS, with the extent of this burden increasing in relation to the duration of the disruption as the scale of resources required to manage the disruption mount over time. Moreover, the ambiguity of not knowing the ultimate duration of a disruption itself exacerbates the burden on RIDHS, because RIDHS has to dedicate additional resources to planning for multiple contingencies.

38.    RIDHS also anticipates that disruption to SNAP benefit issuance will result in additional administrative burden as a result of the need for additional customer support services and communications to recipients. RIDHS will still be required to continue processing applications and recertifications and maintain normal eligibility verification procedures during

10

the shutdown. Whether due to confusion around recertification requirements amid the news around the shutdown or otherwise, many applicants who are otherwise eligible for SNAP benefits may fail to meet their certification procedures and have their application denied or case closed. This disruption, sometimes referred to as "applicant churn," will again require more RIDHS resources during a crucial period of reorganization in light of H.R.1 (the "One Big Beautiful Bill Act" enacted in July 2025).

39.     RIDHS is already spending significant administrative resources managing communications and inquiries regarding the availability of SNAP benefits in November 2025. These communications are occurring, among other things, over call lines and in meetings with constituents and other stakeholders.

40.     RIDHS also anticipates increased foot traffic and disruptions throughout RIDHS's Regional Offices as hungry individuals and families learn they cannot access their benefits, necessitating increased security personnel and law enforcement presence for public safety. Many of these local office staff will face significant burdens on their time in order to explain to recipients that they will not receive the SNAP benefits they anticipated receiving, including recipients who need those funds in order to feed their children and put food on the table. Increased communication demands will likely require RIDHS to incur additional administrative burdens in the form of overtime pay to the limited staff available to handle this workload.

41.     RIDHS anticipates additional billing expenses from its RI Bridges Vendor for its costs/time to disaggregate pro-rated October benefit payments based on mid-month eligibility from the November monthly SNAP issuance batch files.

**Impacts on Rhode Island's Provision of Other Public Benefits**

11

42.    Regardless of the length of the shutdown, any delay in benefit issuance file transmission will have cascading effects on RIDHS's provision of public benefits (of which SNAP is only one component) and the resources required to administer the SNAP program.

43.    Changes to the benefit file schedule will require alterations in the case management system to include new data within established fields, subsequent testing of updated benefit files production with the Vendor, and negotiation of an updated file transfer schedule with the Vendor to send production files—all while numerous other states are trying to simultaneously transmit their own files to the Vendor (which serves as EBT vendor for multiple states).

44.    RIDHS also must prepare for anticipated increases in high-volume demand events on our RIDHS website and mobile app, which is where clients go to check their EBT balances among many other features. These sudden spikes in system access and data queries create residual effects that persist well beyond the initial surge period. High-volume login attempts can overwhelm load balancers and web servers, leading to slower page loads, temporary outages, or degraded functionality across the DHS online ecosystem. Even after traffic normalizes, backend systems must reconcile delayed transactions and incomplete data requests, often requiring manual intervention and reprocessing by IT and program staff. Increased system strain also elevates the risk of data synchronization errors between the RI Bridges platform and connected subsystems, such as the EBT vendor interface and customer portals. This can result in inaccurate account balances, delayed updates to case status, and confusion among clients who depend on real-time information about their benefits. As a result, RIDHS experiences prolonged customer service demand and must reallocate technical resources to system stabilization, delaying ongoing development, testing, and deployment activities. Over time, these residual effects diminish

12

system reliability, increase maintenance costs, and further constrain RIDHS's limited administrative capacity during a period of heightened public reliance and policy transition.

45.    All of this will in turn require RIDHS to dedicate numerous information technology professionals, communications and operational resources, and administrative staff. This in turn will cause RIDHS to deprioritize numerous other pressing and important projects, including ongoing management of other RIDHS-issued benefits as well as preparation for upcoming systemic changes to SNAP administration following the effective date of the H.R.1. Running these changes within RIDHS's production system will cause significant strain on RIDHS's already overworked infrastructure and interfere with department operations, introducing interruptions to RIDHS's ability to determine eligibility for SNAP and continue operating that system for benefits throughout the rest of fiscal year 2026.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 27th day of October 2025, in Cranston, Rhode Island.

*Kimberly Merolla Brito*
Kimberly Merolla-Brito
Director
R.I. Department of Human Services

13