## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

COMMONWEALTH OF
MASSACHUSETTS, et al.,

      Plaintiffs,

v.

U.S. DEPARTMENT OF
AGRICULTURE, et al.,

      Defendants.

No. 1:25-cv-13165-IT

## PROPOSED
## BRIEF OF *AMICUS CURIAE*
## THE STATE OF KANSAS
## <u>IN SUPPORT OF THE DEFENDANTS</u>

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION AND INTEREST OF *AMICUS CURIAE*** ...................................................1

**ARGUMENT** ..............................................................................................................................2

    **I.**      **Only the Attorney General can sue on behalf of Kansas.** .........................3

    **II.**    **Because Governor Kelly is trying to sue on behalf of the State, she lacks standing.** ..............................................................................................................7

**CONCLUSION** ........................................................................................................................10

**CERTIFICATE OF SERVICE** ............................................................................................12

# TABLE OF AUTHORITIES

## Cases

*City of Bangor v. Citizens Commc'ns Co.,*
  532 F.3d 70 (1st Cir. 2008) ............................................................................7

*Copeland v. Robinson,*
  970 P.2d 69 (Kan. Ct. App. 1998) ..................................................................5

*Hafer v. Melo,*
  502 U.S. 21 (1991) ..........................................................................................5

*Katz v. Pershing, LLC,*
  672 F.3d 64 (1st Cir. 2012) ............................................................................7

*King v. Burwell,*
  576 U.S. 473 (2015) ........................................................................................5

*Knight v. Kansas, Bd. of Regents, Univ. of Kan. Med. Ctr.,*
  No. CIV. A. 89-2392-0, 1990 WL 154206 (D. Kan. Sept. 6, 1990) ...........3, 5

*Kobach v. U.S. Election Assistance Comm'n,*
  No. 13-CV-4095-EFM-TJJ, 2014 WL 494801 (D. Kan. Feb. 6, 2014) ......3, 6

*Mountain States Legal Found. v. Costle,*
  630 F.2d 754 (10th Cir. 1980) ........................................................................4

*Nash Cnty. Bd. of Educ. v. Biltmore Co.,*
  640 F.2d 484 (4th Cir. 1981) ..........................................................................4

*New State Ice Co. v. Liebmann,*
  285 U.S. 262 (1932) ........................................................................................2

*Off. of the People's Couns. for the District of Columbia v. D.C. Water & Sewer Auth.,*
  313 A.3d 579 (D.C. 2024) ..............................................................................3

*Orion Wine Imports, LLC v. Applesmith,*
  440 F. Supp. 3d 1139 (E.D. Cal. 2020) ..........................................................8

*Renne v. Geary,*
  501 U.S. 312 (1991) ........................................................................................7

*State ex rel. Foster v. City of Kansas City,*
  350 P.2d 37 (Kan. 1960) .................................................................................6

*State ex rel. Kobach v. Howard,*
  No. SN-2025-CV-000695 (Shawnee Cnty. Dist. Ct.).................................................1

*State ex rel. Miller v. Rohleder,*
  490 P.2d 374 (Kan. 1971).........................................................................................3

*State ex rel. Morrison v. Sebelius,*
  179 P.3d 366 (Kan. 2008).........................................................................................6

*State v. Bowles,*
  79 P. 726 (Kan. 1905)...............................................................................................5

*State v. Finch,*
  280 P. 910 (Kan. 1929).............................................................................................3

*United States v. Winczuk,*
  67 F.4th 11 (1st Cir. 2023).......................................................................................4

*Velerio-Ramirez v. Lynch,*
  808 F.3d 111 (1st Cir. 2015).....................................................................................8

*Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt. Council,*
  589 F.3d 458 (1st Cir. 2009).....................................................................................8

**Constitutional Provisions**

U.S. Const. art. II...........................................................................................................2

U.S. Const. art. III..........................................................................................................7

Kan. Const. art. 1, § 1 ....................................................................................................2

Kan. Const. art. 1, § 3 ....................................................................................................7

Kan. Const. art. 1, § 6 ....................................................................................................9

**Statutes**

Kan. Stat. Ann. § 75-702 ........................................................................................2, 4, 9

**Other Authorities**

Jeffrey S. Sutton, *Who Decides: States as Laboratories of Constitutional Experimentation* (2022)
  ......................................................................................................................................2

## <u>INTRODUCTION AND INTEREST OF *AMICUS CURIAE*</u>

Kansas Governor Laura Kelly once again improperly appears in this Court. The Kansas Constitution *still* does not make her authority turn on federal funding. As apparent from the complaint, Governor Kelly is not suing to narrowly defend her constitutional authority; she purportedly is suing on behalf of Kansas. Kansas law, however, vests only the Attorney General with the authority to direct the State's litigation in federal court, vindicate the State's legal interests, and otherwise sue on behalf of the State. Governor Kelly's involvement in this suit is an unlawful and ultra vires act.

To the extent that Governor Kelly has any limited power to narrowly sue over injuries to her constitutional office, she has not invoked it in this suit. Nor could she, especially in this non-Kansas jurisdiction. Rather than alleging any actual, particularized, and concrete injuries to her constitutional authority, she has invoked only a political grievance related to one state agency.

In addition to being unlawful, Governor Kelly's efforts are disingenuous. The Attorney General, on behalf of the State, recently sued Governor Kelly and the Secretary of the Kansas Department for Children and Families (DCF) to compel them comply with a lawful request by the U.S. Department of Agriculture (USDA) for data about Supplemental Nutrition Assistance Program (SNAP) applicants and participants. *See generally State ex rel. Kobach v. Howard*, No. SN-2025-CV-000695 (Shawnee Cnty. Dist. Ct.). Their defiance caused USDA to indefinitely disallow $10.4 million in program funding for Kansas per quarter. Having no qualms about losing tens of millions of dollars of SNAP funding, Governor Kelly now feigns concern for SNAP recipients. But her actions cement that she only cares about making things harder for President Trump, not easier for Kansans.

Governor Kelly's allegations are insufficient to support her unilateral suit, and they do not provide the standing necessary for this Court to exercise Article III jurisdiction over her claims. Accordingly, this Court should promptly dismiss her and her claims.

## ARGUMENT

The States are known as the laboratories of democracy for good reason. *See New State Ice Co. v. Liebmann*, 285 U.S. 262, 311 (1932) (Brandeis, J., dissenting). In contrast to the federal Constitution, which vests all executive power in the President, *see* U.S. Const. art. II, state constitutions may—and often do—divide up executive authority among separately elected or appointed officers. A leading example is the division of executive power between the general administrative function (the governor) and the legal function (the attorney general). *See, e.g.*, Jeffrey S. Sutton, *Who Decides: States as Laboratories of Constitutional Experimentation* 149 (2022) ("The approach to [the selection of] state attorneys general illustrates how removed the state experience is from the federal one.").

Like the vast majority of states, *see id.*, Kansas has a separately elected Governor and Attorney General, *see* Kan. Const. art. 1, § 1. While the Governor exercises certain executive functions, she does not control Kansas's legal affairs, including its litigation in federal court. Rather, that authority lies *solely* with the Attorney General, *see* Kan. Stat. Ann. § 75-702(a), who did not entangle Kansas as a plaintiff in this litigation. At bottom, Governor Kelly and her co-plaintiffs are attempting to run the federal executive branch via the federal judiciary, an effort that will ultimately fail. He neither joined the suit nor delegated the authority to do so to Governor Kelly. Governor Kelly's executive functions do not create an implied authority to sue in federal court. Kansas law expressly places federal litigation involving state officers and under the Attorney General's purview. *Id.*

But even assuming that Governor Kelly had some limited authority to seek redress for injuries to her role as a constitutional officer, this suit would necessitate broad authorization that she lacks. *Cf. Off. of the People's Couns. for the District of Columbia v. D.C. Water & Sewer Auth.*, 313 A.3d 579, 587 (D.C. 2024) (contrasting an agency's "limited" litigation authority "with the D.C. Attorney General's plenary authority to litigate"). The Governor only has pled an attenuated grievance to a state agency. Creative captioning aside, Governor Kelly attempts to sue on behalf of the State; her press release gives away the game. And the complaint facially establishes that her alleged injuries are not specific to her office but instead are materially the same as those asserted by her state co-plaintiffs and are, if anything, injuries that only the Attorney General could vindicate.

Because Governor Kelly has not alleged sufficient injuries to pursue this action, she lacks legal authority and standing. Accordingly, she is not entitled to any relief.

## I.    Only the Attorney General can sue on behalf of Kansas.

Under Kansas law, "the Attorney General is the chief law officer of the state." *State v. Finch*, 280 P. 910, 911 (Kan. 1929); *see also State ex rel. Miller v. Rohleder*, 490 P.2d 374, 375 (Kan. 1971) (recognizing that "[t]he Attorney General, a constitutional officer, is the chief law enforcement officer of the state" (citation omitted)). And "unless restricted or modified by statute," his "powers are as broad as the common law," where "the attorney general was entrusted with the management of all legal affairs." *Kobach v. U.S. Election Assistance Comm'n*, No. 13-CV-4095-EFM-TJJ, 2014 WL 494801, at *2 (D. Kan. Feb. 6, 2014); *cf. Knight v. Kansas, Bd. of Regents, Univ. of Kan. Med. Ctr.*, No. CIV. A. 89-2392-0, 1990 WL 154206, at *2 (D. Kan. Sept. 6, 1990) (recognizing the Attorney General's role in coordinating and supervising the State's legal defense).

3

The Kansas Legislature has codified the Attorney General's broad authority to control the State's legal affairs, providing that he

> shall appear for the state, and prosecute and defend any and all actions and proceedings, civil or criminal, in the Kansas supreme court, the Kansas court of appeals *and in all federal courts*, in which the state shall be interested or a party, and shall, when so appearing, control the state's prosecution or defense.

Kan. Stat. Ann. § 75-702(a) (emphasis added). The Attorney General thus has the requisite full autonomy to initiate and control the State's litigation in the Kansas appellate courts and federal courts, forums where it is critical for the State to speak in one unified voice. In the Kansas appellate courts, the potential for binding precedent necessitates the Attorney General's oversight; in federal courts, the State is one entity with one advocate. *See Mountain States Legal Found. v. Castle*, 630 F.2d 754, 771 (10th Cir. 1980) (recognizing the "general rule" that "the state attorney general . . . alone has the right to represent the state as to litigation involving a subject matter of statewide interest"); *cf. Nash Cnty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 496 (4th Cir. 1981) (recognizing value in a state litigating through one advocate).

To be sure, the Kansas Legislature has permitted itself and the Governor to have some role in the State's legal affairs:

> The attorney general shall *also*, when required by the governor or either branch of the legislature, appear for the state and prosecute or defend, in any *other court* or before any officer, in any cause or matter, civil or criminal, in which this state may be a party or interested or when the constitutionality of any law of this state is at issue and when so directed shall seek final resolution of such issue in the supreme court of the state of Kansas.

Kan. Stat. Ann. § 75-702(b) (emphases added). Reading subsections (a) and (b) together, the Attorney General has the absolute authority over the State's litigation in the Kansas appellate

courts and federal courts.[1] *See United States v. Winczuk*, 67 F.4th 11, 17 (1st Cir. 2023) ("It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" (quoting *King v. Burwell*, 576 U.S. 473, 492 (2015)). Because state agencies and officers who act in their official capacities are part of the State, their federal litigation falls under the Attorney General's direction. *Cf. Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity . . . should be treated as suits against the State."); *Copeland v. Robinson*, 970 P.2d 69, 74 (Kan. Ct. App. 1998) (recognizing that "[o]fficial capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent" and the Attorney General's role in representing Kansas executive officers); *Knight*, 1990 WL 154206, at *2 (recognizing the Attorney General's legal oversight of state agencies).

The Governor's and the Legislature's narrow ability to request the Attorney General to act is limited to "other" forums—namely, state trial courts, where the State principally litigates through a network of district and county attorneys. The Legislature wanted to ensure "the authority of the government [was] felt, through its chief law officer, in every part of its territory" in case "local authorities" (*i.e.*, district and county attorneys) were "indifferent, incapable, or even antagonistic" when it came to protecting and advancing the public interest. *State v. Bowles*, 79 P. 726, 728 (Kan. 1905). In other words, this provision helps ensure the State may involve itself in litigation if local authorities cannot or will not vindicate the State's interest. And it makes sense; the Governor (though various agencies) and the Legislature (through its members from all over the State) may have access to quick information about recalcitrant local officials.

---

[1] Indeed, before 2023, subsections (a) and (b) of Kan. Stat. Ann. § 75-702 were a single paragraph, further emphasizing that the reference to "any other court" in what is now subsection (b) does not extend to federal courts. *See* 2023 Kan. Sess. Laws ch. 94, § 7.

But the provision does not authorize the Governor to initiate or join federal litigation on behalf of the State.

And even when the Governor or the Legislature tries to direct the Attorney General to litigate in state trial court, the Attorney General *still has the final say*. In previously considering a disagreement between the Attorney General and the Governor over litigation, the Kansas Supreme Court affirmed that because the Attorney General has a unique role as both a constitutional officer *and* as an officer of the court, the Attorney General need not (indeed, cannot) advance litigation he believes is "unmeritorious," even if the Governor disagrees. *State ex rel. Foster v. City of Kansas City*, 350 P.2d 37, 42 (Kan. 1960); *see also State ex rel. Morrison v. Sebelius*, 179 P.3d 366, 377 (Kan. 2008) (affirming that "the legislature, like the governor, lacks constitutional authority to intrude into the attorney general's duties as an officer of the court"). After all, the Attorney General, like any other attorney, is tasked with using his best judgment and discretion in evaluating whether and how to litigate.

The Governor's ability to request the Attorney General to litigate is limited to state trial courts. And even in that context, Kansas law does not require the Attorney General to indiscriminately follow legal directives from the Governor. Moreover, there is no "exhaustion of remedies" whereby the Governor may sue if the Attorney General does not. And although the Attorney General may, in the appropriate case, delegate the authority to sue on behalf of the State in federal court, he has not done so for this suit, and any delegation cannot be implied. *See Kobach*, 2014 WL 494801, at *2–3 (finding a letter from the Attorney General was "sufficient" to authorize the Secretary of State to sue on behalf of the State in federal court).

Kansas law and precedent vest the Attorney General with exclusive "authority to manage all legal affairs of the State of Kansas," including directing federal litigation of state officers and agencies and officers, like the Governor and DCF.

## II.    Because Governor Kelly is trying to sue on behalf of the State, she lacks standing.

In joining this suit, Governor Kelly seeks to usurp the role of the Attorney General by suing on behalf of the State and one of its agencies. Cognizant of the structural limitations imposed on her office, she labels the loss of funding to one agency as an injury to her constitutional authority to "enforce[] the laws of [Kansas]." Kan. Const. art. 1, § 3; Dkt. 1, ¶ 21. Yet the complaint only references Kansas one other time, noting that DCF administers the SNAP program for the State and providing estimates of the number of Kansans who receive SNAP benefits. *See* Dkt. 1, ¶ 56. There is no indication, let alone a clear allegation, that Governor Kelly's constitutional authority has been undermined by the inability of Senate Democrats to agree keep funding the federal government.

Even assuming that a constitutional injury to her office *could* entitle Governor Kelly to sue in her official capacity as distinct from the State itself, Governor Kelly has not alleged a sufficient injury in this suit. Rather, she has alleged a general harm to a state agency—loss of funding for DCF—effectively (and improperly) seeking to represent the State in this Court.

To come within this Court's jurisdiction, Governor Kelly must "clearly . . . allege facts demonstrating that [s]he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (quotation marks omitted); *see also* U.S. Const. art. III. She "must have standing to bring each and every claim that she asserts." *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012). Accordingly, Governor Kelly must demonstrate a concrete, particularized, and direct injury to the only thing

she has sought to vindicate: her constitutional authority. *See City of Bangor v. Citizens Commc'ns Co.*, 532 F.3d 70, 92 (1st Cir. 2008). But she has not; instead, she has only alleged an injury to the State that is insufficient for her to maintain her claims.

The defendants have already contested the plaintiffs' standing and this Court's subject-matter jurisdiction in their opposition to the Motion for an Emergency Temporary Restraining Order. *See* Dkt. 18 at 8–11. Kansas law provides additional reasons why Governor Kelly lacks standing. *See Velerio-Ramirez v. Lynch*, 808 F.3d 111, 117 n.10 (1st Cir. 2015) ("While it is true that amici may not present legal theories not argued by the parties, they may present variations on the arguments presented by a party." (cleaned up)). Regardless, this Court can—and should—consider Governor Kelly's standing as a matter of its Article III jurisdiction, which this Court is "independently obligated" to consider "regardless of whether the parties raise the issue." *See Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt. Council*, 589 F.3d 458, 467 (1st Cir. 2009) (considering standing argument raised by Massachusetts in amicus brief); see also *Orion Wine Imports, LLC v. Applesmith*, 440 F. Supp. 3d 1139, 1146 (E.D. Cal. 2020) ("A court may consider an issue raised by an amicus *sua sponte* if it touches on fundamental issues of the court's jurisdiction.").

To start, the constitutional authority Governor Kelly invokes—enforcing Kansas's laws—is not contingent on federal funding. The Kansas Constitution does not make disbursements of money from the federal government an integral component of the State's governance.[2] Tellingly, Governor Kelly cites no Kansas constitutional provisions or statutes that have been, are, or will be rendered wholly unenforceable due to the temporary loss of SNAP

---

[2] The Kansas Constitution expressly references federal funds only in the context of internal improvements, providing that the State "*may* expend funds received from the federal government for any public purpose in accordance with the federal law authorizing the same." Kan. Const. art. 11, § 9 (emphasis added).