IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RHODE ISLAND STATE COUNCIL OF CHURCHES, *et al.*,

Plaintiffs,

v.

BROOKE ROLLINS, in her official capacity as Secretary of the United States Department of Agriculture, *et al.*,

Defendants.

No. 25-cv-00569-JJM-AEM

### SUPPLEMENTARY DECLARATION OF PATRICK A. PENN

1. I am the Deputy Under Secretary of the Food, Nutrition, and Consumer Services (FNCS) at the United States Department of Agriculture (USDA). As part of my responsibilities, I oversee the FNCS programs including the Supplemental Nutrition Assistance Program (SNAP), which is administered by the Food and Nutrition Service (FNS) within FNCS. The statements made herein, which supplement my October 29, 2025, declaration made in *Commonwealth of Massachusetts, et al. v. USDA*, 1:25-cv-13165 (Penn Decl. Doc. No. 14-2), are based on my personal knowledge and information made available to me in the course of carrying out my official duties and responsibilities.

1

**Use of SNAP Contingency Fund for Reduced November Benefits**

2.     At the beginning of fiscal year 2026, FNS had $6 billion in SNAP contingency funds. In October 2025, FNS used $450 million from the contingency fund for SNAP State agencies' administrative expenses (SAE) and an additional $300 million for the Nutrition Assistance Program (NAP) block grants for Puerto Rico and American Samoa.[1]

3.     Per orders issued by the United States District Courts for the Districts of Massachusetts and Rhode Island, FNS intends to deplete SNAP contingency funds completely and provide reduced SNAP benefits for November 2025.

4.     Even in the absence of an appropriation, states must by law continue to accept applications and conduct eligibility determinations. 7 C.F.R. 271.7(e)(1). States also must incur necessary expenses to re-calculate and distribute benefits. Accordingly, states continue to incur SAE necessary to operate SNAP. For November, FNS will obligate $450 million from the contingency fund for SAE, and an additional $150 million for NAP in Puerto Rico and American Samoa (50% of the value of one month of each block grant)[2].

5.     The above will leave a total of $4.65 billion in the contingency fund for November SNAP benefits that will all be obligated to cover 50% of eligible households' current allotments.

6.     This means that no funds will remain for new SNAP applicants certified in November, disaster assistance, or as a cushion against the potential catastrophic consequences of shutting down SNAP entirely. *See* Penn Decl. Doc. No. 14-2 ¶ 21.

---

[1] NAP is authorized by 7 U.S.C. 2028. SNAP, which is separate from NAP, is established under 7 U.S.C. 2013(a). NAP is a block grant to Puerto Rico and American Samoa that operates under standards and systems separate from SNAP. Although separate, NAP and SNAP are funded out of the same appropriations provided in annual appropriation acts.
[2] NAP block grants for Puerto Rico and American Samoa cover both benefits and administrative expenses.

**Consideration of Diverting Section 32 Child Nutrition Funds or Other Funds to SNAP**

7. In addition to routing the remaining SNAP contingency funds to partial November 2025 SNAP benefits, USDA has carefully considered tapping Section 32 funds that, pursuant to statute, were transferred to FNS to be used for Child Nutrition Programs. USDA would need at least $4 billion from those Child Nutrition funds to provide full SNAP benefits instead of reduced benefits for the month of November.

8. USDA contemplated various factors including the statutory mandate evidencing clear Congressional intent that Section 32 funds transferred to FNS be used for Child Nutrition Programs (*see* 7 U.S.C. 612c-6(b)(1)), which are a group of programs that are distinct from SNAP in terms of legal authority, appropriations accounts, and operations. In addition, USDA considered the impact a transfer of the magnitude necessary to support SNAP would have on Child Nutrition Programs, the likelihood (or lack thereof) of Congress's ability to appropriate additional billions of dollars for Child Nutrition Programs for FY26 to make up the funding shortfall such an additional transfer would create, and the Courts' orders.

9. Ultimately, USDA has determined that Section 32 Child Nutrition Program funds must remain available to protect full operation of Child Nutrition Programs throughout the fiscal year, instead of being used for SNAP benefits. Section 32 Child Nutrition Program funds are not a contingency fund for SNAP. Using billions of dollars from Child Nutrition for SNAP would leave an unprecedented gap in Child Nutrition funding that Congress has never had to fill with annual appropriations, and USDA cannot predict what Congress will do under these circumstances.

10. The Child Nutrition Programs, which include the National School Lunch and Breakfast Programs, Summer Food Service Program, and Summer EBT (SUN Bucks), provide critical, nutritionally-balanced meals and food assistance benefits to millions of children every day.

Through the National School Lunch Program alone, approximately 29 million children per day receive nutritionally balanced, low-cost or no-cost lunches.[3]

11.     Funding for Child Nutrition Programs derives primarily from two sources—annual appropriations and funds transferred from the Section 32 account, the latter of which constitutes the bulk of Child Nutrition Programs funding.  *See* 7 U.S.C. 612c-6(b)(1).

12.     Section 32 refers to a mandatory appropriation (7 U.S.C. 612c) that receives 30 percent of customs receipts on all imports from the prior calendar year.  A large portion of those funds go to Child Nutrition Programs.  *See* Penn Decl. Doc. No. 14-2 ¶ 30. To make them available for SNAP, USDA would need to execute its discretionary authority under 7 U.S.C. 2257.  Much of the public discussion of Section 32 misunderstands the funding; Congress has designated uses for Section 32 funds that do not include SNAP, and Congress purposefully avoided keeping any remainder and/or unallocated Section 32 funds for general contingency purposes.

13.     While Section 32 funds are essential to Child Nutrition Programs, they do not fully fund Child Nutrition Programs. Rather, Congress must fund the remainder through annual appropriations.

14.     As an example of the dual funding streams for Child Nutrition Programs, in FY24, the total cost of Child Nutrition Programs was approximately $33 billion.  *See* Consolidated Appropriations Act, 2024, Pub. L. 118-42, 138 Stat. 25, 92 (Mar. 9, 2024).  Roughly $28.8 billion came from Section 32 funds and $4.5 billion came from annual appropriations.  For FY25, the total cost of

---

[3] Studies that account for the greater likelihood of participation in these programs among children from food-insecure households find that school meal programs reduce food insecurity among children. Child Nutrition Programs also contribute to diet quality and academic performance for children from low-income and food-insecure households.
https://ers.usda.gov/sites/default/files/_laserfiche/publications/84003/EIB-174.pdf?v=39281

Child Nutrition Programs was approximately $32.4 billion, with $22.4 billion coming from Section 32 funds and $10 billion coming from annual appropriations.

15.     For FY26, there is $25.2 billion in Section 32 funds derived from customs receipts, and approximately $23 billion was transferred to FNS for the Child Nutrition Programs. See 7 U.S.C. 612c-6(b)(1).  Based on the FY26 USDA budget request, this would mean Congress must still appropriate at least $13.2 billion for Child Nutrition Programs in FY26 for a total of $36.27 billion.

16.     However, using USDA's discretionary authority at 7 U.S.C. 2257 to transfer such a significant portion of Child Nutrition funds to "top off" SNAP contingency funds and issue full November SNAP allotments would leave Child Nutrition Programs, which feed no fewer than 29 million children, with an unprecedented and significant shortfall.

17.     Under current law, another infusion of Section 32 tariff funds to Child Nutrition Programs will not occur until FY27. In other words, the $4 billion removed from Child Nutrition Programs for one month of SNAP benefits would be a permanent loss to Child Nutrition Programs for the entirety of their annual operations in FY26.

18.     If Congress were to pass an annual appropriations act or continuing resolution with usual terms and conditions, that $4 billion gap would *not* be filled because Congress would not replenish the Section 32 portion with annual appropriations (again, the Section 32 transfer is funded annually with customs receipts).

19.     To make Child Nutrition Programs whole for FY26, Congress would need to appropriate an additional $4 billion in new budget authority.  In other words, instead of Congress appropriating the estimated $13.2 billion for Child Nutrition Programs in FY26, Congress would need to appropriate more than *$17.2 billion* for Child Nutrition Programs to continue funding the Child

5

Nutrition Programs at the level required to serve all eligible children. The pending continuing resolution makes no such additional appropriation.

20.     While USDA transferred approximately $300 million in October 2025 to support the Special Supplemental Nutrition Program for Women, Infants, and Children (WIC), there are key differences.  For example, the magnitude of the amounts ($300 million for WIC in October 2025 versus $4 billion for SNAP) is a material consideration.  While USDA believes there are sufficient funds in the Child Nutrition Programs to support WIC during these unprecedented circumstances, the agency does not believe the same is true for SNAP due to the significant differences between the amounts at issue.

21.     USDA also believes a transfer of Child Nutrition Program funding to support SNAP would further stray from Congressional intent.  While Congress has developed a statutory scheme for providing partial SNAP benefits and, according to the Courts, provided contingency funds at a level it has deemed sufficient, USDA would ignore those provisions while also threatening its ability to administer Child Nutrition Programs if it were to repurpose funds Congress explicitly intended be used only for Child Nutrition Programs.  A much smaller transfer for WIC does not undermine performance of the Child Nutrition Programs and raises no such concerns.

22.     Amid this no-win quandary and upon further consideration following the Courts' orders, USDA has determined that creating a shortfall in Child Nutrition Program funds to fund one month of SNAP benefits is an unacceptable risk, even considering the procedural difficulties with delivering a partial November SNAP payment, because shifting $4 billion dollars to America's SNAP population merely shifts the problem to millions of America's low income children that receive their meals at school.

23. The discretionary interchange authority at 7 U.S.C. 2257 allows transfers within the same "bureau, division, or office". SNAP, Child Nutrition Programs, and WIC are in the same "bureau, division, or office," namely FNCS. As explained, using Section 32 Child Nutrition Program funds jeopardizes those crucial programs, and WIC does not have funds to spare for SNAP. There are no other large blocks of funding—that is, funding not tied to yearly appropriations—within FNCS that could be used to supplement SNAP.

**Actions to Implement Reduction in Benefits**

24. There are procedural difficulties that States will likely experience which would affect November SNAP benefits reaching households in a timely manner and in the correctly reduced amounts. *See* Penn Decl. Doc. No. 14-2 ¶¶ 22-28.

25. Before States begin making the novel system changes to implement the benefit reductions, USDA must notify States of the effective date of the reduction and by what percentage maximum SNAP allotments are to be reduced. *See* 7 C.F.R. § 271.7(d)(1)(i) and (ii).

26. USDA is prepared to issue such notice and revised issuance tables to State agencies on November 3, 2025. States will rely on the issuance tables to calculate the benefits due to each eligible household in their respective States. To assist State agencies with the massive changes, USDA will have staff available for technical assistance.

27. As is required by Federal law, after receiving notice from FNS, State agencies must recode their eligibility systems to adjust for the reduced maximum allotments. *See* 7 C.F.R. 271.7(d)(1)(ii); 274.2(a). The resulting reduced benefits amounts for certified SNAP households will be sent to States' EBT processors in "issuance files." *See* Penn Decl. Doc. No. 14-2 ¶ 7, 24.

28. Given the variation among State systems, some of which are decades old, it is unclear how many States will complete the changes in an automated manner with minimal disruption versus

manual overrides or computations that could lead to payment errors and significant delays. *See* Penn Decl. Doc. No. 14-2 ¶ 24.

29. For at least some States, USDA's understanding is that the system changes States must implement to provide the reduced benefit amounts will take anywhere from a few weeks to up to several months. *See* Penn Decl. Doc. No. 14-2 ¶ 25.

30. In addition to adjusting eligibility and benefit issuance files to accommodate the reduction, States must notify all SNAP households of the reduction, as well as handle any requests for fair hearings from SNAP households related to the reduction. *See* 7 C.F.R. 271.7(d)(4) and (f).

31. As noted above, USDA will issue the appropriate notice and issuance tables today to comply with the Court's order.

I declare under penalty of perjury that the foregoing is true and correct.

PATRICK PENN
Digitally signed by PATRICK PENN
Date: 2025.11.03 11:17:44 -05'00'

Patrick A. Penn
Deputy Under Secretary
Food Nutrition and Consumer Services
UNITED STATES DEPARTMENT OF AGRICULTURE