# EXHIBIT 5

## DECLARATION OF SARAH ADELMAN

I, Sarah Adelman, declares under penalty of perjury, pursuant to 28 U.S.C. Section 1746, as follows:

### **Professional and Agency Background**

1. I am currently the Commissioner of the New Jersey Department of Human Services ("NJDHS"). I have been employed as Commissioner since January 2021. Prior to becoming the NJDHS Commissioner, I served as the NJDHS's Deputy Commissioner overseeing the Developmental Disabilities, Aging Services, and Medicaid Divisions. Before that, I served in management roles at a statewide health care organization.

2. I am familiar with the information in the statements set forth below either through personal knowledge, consultation with agency staff, or from my review of relevant documents and information.

3. I submit this declaration in support of the Plaintiffs' reply brief in support of their Motion for a Temporary Restraining Order in *Massachusetts, et al. v. United States Department of Agriculture, et al.*, No. 1:25-cv-13165 (D. Mass). This declaration supplements my prior declaration in the same case on October 27, 2025.

4. NJDHS is New Jersey's largest agency, serving approximately 2.1 million residents. Amongst these 2.1 million NJ residents includes, but is not limited to: (a) older residents, individuals, and families with low incomes; (b) people with developmental disabilities, or late-onset disabilities; (c) people who are blind, visually impaired, deaf, hard of hearing, or deaf-blind; (d) parents needing child care services, child support and/or healthcare for children; (e) people who are dealing with addiction and mental health issues; and (f) families facing catastrophic

medical expenses for their children. Through NJDHS's eight (8) divisions, the agency provides numerous programs and services designed to give eligible individuals and families assistance with economic and health challenges.

5. NJDHS's Division of Family Development ("NJDFD") supervises four (4) programs to support New Jersey families, including New Jersey's Supplemental Nutrition Assistance Program ("NJ SNAP"), which helps provide food assistance to families with low incomes through the issuance of monthly electronic benefits that can be used to purchase food at authorized stores.

6. NJ SNAP functions as a key part of New Jersey's efforts to address hunger by supplementing the food budget of low-income families so they can purchase healthy food. In the 2024 calendar year, approximately $2 billion in NJ SNAP benefits were issued. As of August 2025, there were 812,966 persons receiving NJ SNAP, representing 436,452 households; 340,425 children; and 176,706 elderly individuals. NJ SNAP plays a critical role, through federal funding, to support NJ families in need of food assistance.

7. Pursuant to federal law, NJDHS is responsible for the issuance, control and accountability of SNAP benefits and Electronic Benefit Transaction ("EBT") cards; ensuring program integrity; and supervising New Jersey's 21 counties in their day-to-day administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households.  7. U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2.

8. NJDHS is in receipt of the United States Department of Agriculture's (USDA) response to this Court's October 31, 2025 Order in *Massachusetts et al.* (ECF Nos. 48 and 48-1), which was filed on the docket on November 3, 2025.  In that response, and in the accompanying declaration signed by Deputy under Secretary Patrick A. Penn of the USDA, USDA advised that

it was "making all of the Contingency Funds available to the States for a partial payment" but that it was choosing "not to deplete other programs to fully fund this month's SNAP benefits."

9. Deputy Under Secretary Penn's declaration explained that, based on USDA's calculations, there would be "a total of $4.65 billion in the contingency fund for November SNAP benefits that will all be obligated to cover 50% of eligible households' current allotments" and that USDA was "prepared to issue such notice and revised issuance tables to State agencies on November 3, 2025." Finally, the declaration noted that "States will rely on the issuance tables to calculate the benefits due to each eligible household in their respective States."

10. On November 4, 2025, NJDHS received a Memorandum from USDA titled "Supplemental Nutrition Assistance Program (SNAP) Benefit and Administrative Expense Update for November 2025," as well as Reduced Allotment tables for November 2025.

11. The November 4, 2025 Memorandum advised that "[d]ue to the limited availability of Federal funding and orders from two Federal courts, the Food and Nutrition Service (FNS) is reducing SNAP maximum allotments to 50 percent of the eligible household's current allotment for November 2025 in accordance with 7 CFR 271.7."

12. The November 4, 2025 Memorandum further explained that: "State agencies must take immediate action to implement this reduction as specified in this memorandum and in accordance with 7 CFR 271.7. Please note that in applying the reduction, per Federal law, all one- and two- person households affected by the reduction shall receive the minimum monthly benefit as specified in the revised allotment tables. In addition, State agencies shall follow the procedures outlined in 7 CFR 271.7(d)(1)(ii) to provide for the rounding of benefit levels of $1, $3 and $5 to $2, $4 and $6, respectively."

13. Since receiving the Memorandum and Reduced Allotment tables on November 4, 2025, NJDHS has been working diligently to assess how quickly it can implement the changes USDA is requiring in order to transmit issuance files for partial November 2025 benefits to Conduent State & Local Solutions, Inc. ("Conduent"), which is New Jersey's Electronic Benefits Transfer ("EBT") vendor.

14. NJDHS has had several rounds of discussion among the program staff at DFD responsible for administering SNAP in New Jersey, as well as with internal NJDHS staff who are responsible for coding the Family Assistance Management Information System (FAMIS) NJDHS uses for calculation and transmittal of issuances to Conduent.

15. From those discussions, NJDHS has concluded that if it is required to re-code the system to account for USDA's Reduced Allotment tables, it will take approximately four to six weeks at a minimum before NJDHS can even begin transmitting issuances to Conduent, meaning that eligible SNAP recipients and households will have been deprived of SNAP benefits for virtually the entire month of November.

16. These delays are due to a number of factors, including that NJDHS has limited staff resources available to re-code the tables and, after that re-coding occurs, NJDHS will still need to engage in testing to ensure that the calculations are run correctly.

17. Furthermore, even if NJDHS does re-code the system, there will still exist a mismatch between the system-generated notices, which will display the household's full allotment (the original allotment that household is entitled to) as opposed to the actual partial payments these households will be receiving. NJDHS will not be able to fix this mismatch for this revised November partial issuance.

18. There are additional concerns presented by NJDHS re-coding the system in line with USDA's Reduced Allotment tables, and with issuing partial benefits overall due to retroactive benefit rules. Standard practice as supported by federal regulation permits SNAP recipients who submitted their application in one month and are approved in a subsequent month to be issued both months' worth of benefits in one combined issuance. For example, SNAP recipients whose applications were submitted in October and approved on or after October 31st are eligible for retroactive benefits but would not receive the correct full amount as the Reduced Allotment tables would apply to both October and November issuances. This means that these SNAP recipients, who are legally entitled to retroactive benefits, will nevertheless receive reduced benefits for the month of October and any preceding months to which they may be entitled.

19. In addition to the impact on SNAP recipients whose retroactive payments will be reduced, re-coding the system to account for the USDA's Reduced Allotment tables will also result in some SNAP recipients receiving benefits in an amount far less than an actual 50% reduction, and some being ineligible to receive benefits at all. That is because under FNS' guidance, all newly eligible and ongoing cases must undergo a recalculation of benefits in accordance with 7 CFR 273.10(e)(2)(ii) subject to the new tables. Once those calculations are appropriately applied and subtracted from the maximum benefit allotment for that particular size household, the resulting amount is not 50% of the FY26 tables.

20. In fact, after looking at a sample of 10,000 SNAP cases from July 2024, NJDHS has concluded that under the Reduced Allocation tables, the average SNAP household would receive an average of 39% of their total allotment. The total range spans from 21% to 50%, and also includes a handful of cases coming in at 0%, meaning that an otherwise eligible household would not receive benefits at all.

21. Furthermore, SNAP cases found to be ineligible will be closed automatically (and clients may be noticed that their case was closed), causing further administrative burdens and harm in the long run.

22. In addition to all of the above, because of the significant time involved in re-coding the system to account for updated tables from USDA, if NJDHS re-codes the system to account for the November Reduced Allotment tables as USDA's current instructions require, there will be a <u>further</u> delay of approximately 4-6 weeks in returning eligible SNAP recipients to full benefit status when it becomes necessary to do so (either due to further order from this Court, or when the federal government is funded and the shutdown has ended).

23. This will effectively mean that eligible SNAP recipients and households will experience significant delays, disruptions, and deprivation of benefits not just once, but twice—once while trying to provide them with a partial benefit, and once when trying to return them to their full benefit status.

24. NJDHS has considered and is in a position to implement an alternative option.

25. The November 4, 2025 Memorandum reported that USDA was issuing Reduced Allotment tables to "reduc[e] SNAP maximum allotments to 50 percent of the eligible household's current allotment for November 2025 in accordance with 7 CFR 271.7."

26. If NJDHS is permitted to implement a flat 50% reduction in household benefits across eligible recipients through a modified systemic process that would apply the reduction of the November issuances to newly eligible and ongoing cases for as long as may be needed, which NJDHS has not transmitted to Conduent consistent with USDA's prior notices, then it will be able to do so much more quickly—potentially within days.

27. Because implementing a flat 50% reduction in benefits through this manner will not involve re-coding the system in its entirety, not only will this method allow NJDHS to transmit issuances far sooner, it will also permit NJDHS to quickly resume issuance of full benefits if such relief is ordered by this Court, or when the federal shutdown ends and SNAP is again fully funded.

28. In short, compelling USDA to fully fund SNAP benefits for November, or at a minimum permitting NJDHS to implement a flat 50% reduction, will not only resolve significant administrative and financial burdens on the State of New Jersey resulting from USDA's Revised Allocation tables, it will also offer immediate, necessary, and life-saving relief to the over 800,000 affected individuals in New Jersey.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of November, 2025 in Trenton, NJ.

*Sarah Adelman*

_____
Sarah Adelman
Commissioner
New Jersey Department of Human Services