IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF<br>MASSACHUSETTS; et al.,<br><br>                        Plaintiffs,<br><br>      v.<br><br>UNITED STATES DEPARTMENT OF<br>AGRICULTURE; et al.,<br><br>                      Defendants. | Case No. 1:25-cv-13165 |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' FURTHER MOTION FOR A TEMPORARY RESTRAINING ORDER

In the span of less than a week, USDA has circulated multiple formal guidance documents, each inconsistent with the prior one, forcing the Plaintiffs into a continual state of whiplash. Most recently, on Friday, November 7, after a federal district court ordered USDA to pay full SNAP benefits, USDA issued guidance informing Plaintiffs that it was complying with that order, and recognizing that the process would require Plaintiffs to transmit "full issuance files to [their] EBT processor." Relying on the court order and/or the November 7 USDA guidance, several Plaintiffs submitted issuance files for full benefits to their processors. Late Friday night, the Supreme Court administratively stayed the district court order. Then late Saturday night, November 8—a full day after the Supreme Court's stay order—USDA sent Plaintiff new guidance directly contrary to the prior one. In that guidance, USDA claimed that Plaintiffs acted improperly by sending full issuance files, and "must immediately undo any steps taken to issue full SNAP benefits for November 2025." *See* Nov. 8 USDA Guidance, Doc. No. 79-1 at 4. USDA threatened Plaintiffs with potentially catastrophic penalties for "failure to comply with this memorandum," including cancelling federal administrative support for SNAP and "holding States liable" for any purported

"overissuances that result from the noncompliance." *Id.*

As set forth below and in Plaintiffs' earlier pleadings, *see* Doc. Nos. 4, 68, 75, and 78, Defendants' actions continue to inflict irreparable harm on the Plaintiffs. Defendants' November 8 guidance underscores the arbitrary and capricious nature of their conduct in this matter and demonstrates the need for immediate relief. USDA must make full benefits available to SNAP beneficiaries without delay, and the November 8 guidance should be enjoined. USDA may not force Plaintiffs to "undo" actions they took to make SNAP benefits available to their residents pursuant to a Court Order and USDA guidance; and may not take steps to penalize Plaintiffs for failing to "undo" such actions, particularly during the pendency of this litigation. In light of the USDA's conflicting guidance, its improper demands and threats, the immediate peril faced by Plaintiffs and their residents, and the rapid speed with which events have developed, Plaintiffs respectfully request that the Court hold a hearing on Monday, November 10.[1]

## **BACKGROUND**

On October 30, a group of municipal and nonprofit organizations brought an action[2] seeking relief from USDA's unprecedented suspension of SNAP benefits in the U.S. District Court for the District of Rhode Island. *R.I. State Council of Churches v. Rollins*, 1:25-cv-569 (D.R.I. 2025). On October 31, that court issued a temporary restraining order directing the Defendants either to make full SNAP payments or to resolve administrative burdens so partial benefits could be available to SNAP recipients on or before November 5, 2025. The court entered a written order memorializing this decision on November 1, 2025.

---

[1] Defendants' position as to Plaintiffs' request for a hearing is set forth in the Local Rule 7.1 Certificate.

[2] In addition to Defendants here, the plaintiffs before the Rhode Island District Court included as defendants the United States Department of Treasury and Scott Bessent, in his official capacity as Secretary of the United States Department of Treasury. For ease of reference, Plaintiffs will refer to both the defendants in the District of Massachusetts and those in the District of Rhode Island as the "Defendants."

**A.** *November 4 Guidance and Failure to Comply with Court Orders*

On Monday, November 3, 2025, the Defendants confirmed through filings in both the Rhode Island District Court and this Court that they intended to make only partial payments. *See, e.g.*, Supp. Penn. Decl., Doc. No. 48-1. The Defendants openly acknowledged that their proposed plan guaranteed that SNAP recipients would be subject to further delays of their essential benefits. *See id.* at 8 ¶ 29 (implementing USDA's plan could "take anywhere from a few weeks to up to several months"). The following day, USDA released guidance to Plaintiffs on how to prepare issuance benefit files for vendors to "reduc[e] SNAP maximum allotments to 50 percent of the eligible household's current allotment for November 2025." Nov. 4 USDA Guidance, Doc. No. 55-1 at 1. Plaintiffs immediately took steps to implement this guidance, including reviewing how their agencies could put USDA's guidance into practice. The November 4 guidance raised substantial concerns, as certain Plaintiffs realized that implementing the guidance would subject their citizens to substantial delays in receiving critical benefits. Moreover, despite Defendants' assertion that this guidance complied with Court orders compelling them to use the full contingency fund, the guidance left over $1 billion in the contingency fund untouched. *See* Defs.' Reply in Supp. of TRO, Doc. No. 68 at 5.

That same day, on November 4, the plaintiffs before the Rhode Island District Court moved to enforce the TRO or, in the alternative, to enter a new TRO requiring the Defendants to make full payments to SNAP recipients. They argued, among other things, that the Defendants had failed to comply with the Rhode Island District Court's prior order and that the decision not to fully fund benefits was arbitrary and capricious in light of the substantial delays associated with partial benefits. On November 6, Plaintiffs in this litigation filed a Reply in further Support of their Motion for a TRO (Doc. No. 68) reiterating their request for full benefits, which the Court addressed as an Amended Motion for a TRO (Doc. No. 70).

**B.  *November 5 Guidance***

Defendants realized that USDA's November 4 guidance was in "error" and, on the evening of November 5, 2025, USDA released new guidance with updated tables. Second Notice to the Court as to Nov. 5 USDA Guidance, Doc. No. 65-1. This time, USDA directed Plaintiffs to reduce maximum allotments by 35% instead of 50%, "so that the maximum allotments for November 2025 will be 65 percent of the typical maximum allotments." *Id.* In their notice to the Court, nowhere did Defendants explain that this new guidance contradicted the prior guidance provided to Plaintiffs or that the November 5 guidance required Plaintiffs to completely redo issuance benefit files. Nor did Defendants make any effort to explain that the November 4 guidance was erroneous, or to address any chaos that might arise from sending sequential contradictory guidance documents.

**C.  *November 6 Order and November 7 Guidance***

On November 6, 2025, the Rhode Island District Court found that the Defendants had failed to fully comply with the court's first order and ordered USDA "to make full SNAP payments to the States by Friday, November 7, 2025, by utilizing available Section 32 funds in combination with the contingency funds." *R.I. State Council of Churches v. Rollins*, 1:25-cv-569 (D.R.I. 2025), Doc. No. 34 at 14. The court further determined that USDA's decision to not fully fund SNAP benefits was arbitrary and capricious, and its decision to make only partial payments was legally defective for multiple reasons. The court found it "astounding" that Defendants failed to consider that partial payments could force tens of millions of Americans "to go without food for a few weeks to up to several months" and that their "simple disregard[]" of these "serious reliance interests" was "patently arbitrary and capricious." *Id.* at 18-19 (internal quotation omitted). Moreover, although the Defendants claimed that funding full SNAP benefits would leave a separate program underfunded, its explanation was "contrary to the evidence" and "pretextual."

4

*Id.* at 23. And the purported "procedural difficulties" in administering full benefits were of the Defendants' own making. *Id.* at 18. The Rhode Island District Court issued a second TRO that directed the Defendants to "make full payments of November SNAP benefits to the States by Friday, November 7, 2025"—the next day. *Id.* at 27. The Defendants filed an appeal on the evening of November 6, 2025. Nov. 8 USDA Guidance, Doc. No. 79-1 at 2.

At about 9 am[3] the next day, November 7, the Defendants filed an emergency motion in the First Circuit for an immediate administrative stay and a stay pending appeal. *R.I. State Council of Churches v. Rollins*, No. 25-2089 (1st Cir. Nov. 7, 2025). Less than four hours later, shortly before 1 p.m.—before the First Circuit had ruled on its motion—USDA notified the Plaintiffs that it was implementing full SNAP benefits for November:

> FNS is working towards implementing November 2025 full benefit issuances in compliance with the November 6, 2025, order from the District Court of Rhode Island. Later today, FNS will complete the processes necessary to make funds available to support your subsequent transmittal of full issuance files to your EBT processor.

Nov. 7 USDA Guidance, Doc. No. 75-1.[4] The November 7 guidance mentioned neither the Government's appeal nor its pending emergency motion, nor did it advise that any further guidance or instructions were forthcoming, or instruct Plaintiffs to delay releasing issuance benefit files to their respective EBT vendors.

After issuing its guidance and before the First Circuit had ruled, in the early evening of November 7, the Defendants asked the Supreme Court to intervene. *See* App.l'n for Stay, *Rollins v. R.I. State Council of Churches*, No. 25A539 (U.S. Nov. 7, 2025). Defendants acknowledged that, absent an immediate stay of the orders by the Rhode Island District Court, they would be required to transfer funds that night. *Id.* The filing failed to mention USDA's guidance to Plaintiffs

---

[3] All time stamps are Eastern Standard Time.

[4] Plaintiffs originally provided the November 7 USDA guidance to the Court in their Notice of Supplemental Facts (doc. no. 75), alerting the Court to the guidance and that certain Plaintiffs had already acted in reliance on it.

from just hours before—that USDA was actively working to "make funds available" later that day. Nov. 7 USDA Guidance, Doc. No. 75-1.

Soon thereafter, shortly after 6 pm, the First Circuit denied the request for an administrative stay. *R.I. State Council of Churches*, No. 25-2089 (1st Cir. Nov. 7, 2025). While the First Circuit did not decide the motion for a stay pending appeal, the court expressed its "inten[t] to issue a decision on that motion as quickly as possible." *Id.* At approximately 9:35pm on November 7, the Supreme Court administratively stayed the Rhode Island District Court's orders. *Rollins v. R.I. State Council of Churches*, 25A539 (U.S. Nov. 7, 2025). It did so "to facilitate the First Circuit's expeditious resolution" of the pending stay motion, with the expectation that the First Circuit would issue a decision "with dispatch." *Id.* The Supreme Court provided that its administrative stay would terminate forty-eight hours after the First Circuit's decision. *Id.*

By the time of that stay, in reliance on the Rhode Island District Court's order and USDA's notice, many Plaintiffs had begun submitting files to their SNAP vendors for full November benefits and informing the public that the benefits were now available—allowing residents who had been without food benefits to feed their families.[5] Indeed, doing so was necessary to facilitate USDA's compliance with the court's order, which required that USDA fund full benefits by November 7. As but one example, the Hawai'i Department of Human Services transmitted over 78,700 full benefit files to its financial services vendor. Ex. 1, Morishige Decl. ¶¶ 22. As a result of that prompt action, those Hawai'i SNAP recipients whose files were transmitted now have access to their benefits. *Id.* ¶ 23.

### D. *November 8 Guidance*

---

[5] Plaintiff States were not the only states to do so.  New Hampshire, for example, issued full November SNAP benefits on November 7.  *See* Press Release, N.H. Dep't of Health & Human Servs., https://www.dhhs.nh.gov/news-and-media/dhhs-announces-availability-full-snap-benefits (Nov. 7, 2025) ("New Hampshire has received notification from its federal partners that the Supplemental Nutrition Assistance Program (SNAP) will be fully funded for November.").

At around 10 pm, on Saturday, November 8—after full benefits had been activated on EBT cards in many Plaintiff States and after residents had already used those benefits at retailers— USDA abruptly changed position from its November 7 guidance, claiming that sending full SNAP payment files "was unauthorized" and that Plaintiffs must "immediately undo any steps taken to issue full SNAP benefits for November 2025." Nov. 8 USDA Guidance, Doc. No. 79-1 at 4.

Instead of full benefits, USDA instructed Plaintiffs to "continue to process and load the partial issuance files that reflect the 35 percent reduction," as detailed in USDA's November 5 guidance. *Id.* And if Plaintiffs "fail[ed] to comply with this memorandum," USDA threatened to "tak[e] various actions, including cancellation of the Federal share of State administrative costs and holding States liable for any overissuances that result from the noncompliance." *Id.*

USDA did not explain how it was "unauthorized" for Plaintiffs to send full benefit files after USDA had itself assured States that it was implementing full benefits. Nor did USDA explain how Plaintiffs could "undo" the issuance of full SNAP benefits, or make any effort to grapple with the severe consequences of its about-face.

Before the November 8 guidance, and in reliance on USDA's promise of "mak[ing] funds available," Nov. 7 USDA Guidance, Doc. No. 75-1, many Plaintiffs had acted swiftly to do their part to get benefits to citizens by sending benefit issuance files to their EBT vendors. Quickly thereafter, vendors received the benefit files and loaded EBT cards with SNAP benefits, and SNAP recipients began using their November benefits to purchase critically needed food. *See*, *e.g.*, Ex. 1, Morishige Decl. ¶¶ 22-24. Those steps cannot be unwound easily, if at all.

Plaintiffs would suffer lasting harms, too. According to the November 8 guidance, USDA is taking the position that failing to satisfactorily unwind November SNAP benefits could result in the cancellation of the Federal share of state administrative costs. For Hawai'i alone, those costs would be upwards of $32 million. *Id.* ¶¶ 8, 31. Moreover, because of Defendants' whipsaw

approach to SNAP throughout the shutdown, Plaintiffs' agencies are already expending significant administrative resources to handle shutdown-related inquiries. *Id.* ¶¶ 37, 38. The recent SNAP instability erodes trust with State residents, likely deterring future SNAP participation. *Id.* ¶ 35. Lower rates of SNAP participation would raise costs elsewhere for Plaintiffs, including in providing healthcare, strengthening other safety net programs, and rebuilding trust in public agencies. *Id.*

## ARGUMENT

**I.      Plaintiffs are likely to succeed on the merits of their claims.**

### A.      The November 8 letter is yet another event in the sequence of arbitrary and capricious agency actions that began on October 10.

The November 8 letter is yet more conduct by Defendants—the latest in a sequence of events that began on October 10, and that are challenged in Plaintiffs' Complaint—that constitutes an arbitrary and capricious agency action in violation of the APA. *See* Compl., Doc. No. 1 at 23-29, 40-43 ¶¶ 105-136, 185-198; Pls.' Mem. in Supp. of TRO, Doc. No. 4 at 15-17; Pls.' Amended Mot. for TRO, Doc. No. 68 at 4-6.

*First*, Defendants failed to provide any reasoned explanation for the directive in the November 8 letter that States "undo any steps taken to issue full SNAP benefits." Nov. 8 USDA Guidance, Doc. No. 79-1 at 4; *see FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021) (an agency's action must be "reasonable and reasonably explained"); *DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 16 (2020) (the APA requires agencies "to engage in reasoned decisionmaking") (cleaned up). Without any explanation whatsoever, the November 8 guidance simply asserts that Plaintiffs' transmission of full benefits files was "unauthorized." Doc. No. 79-1 at 4. But the Rhode Island District Court issued an order to "make full payments of November SNAP benefits to the states," and that order was in effect from the time the court issued it from the bench on November 6 until the Supreme Court issued an administrative stay just before 9:30 pm on November 7. That

order has not been reversed. And USDA itself told the Plaintiffs on November 7 that it was "working towards implementing November 2025 full benefit issuances in compliance with" the Rhode Island District Court order, and that it would "complete the processes necessary to make funds available." Nov. 7 USDA Guidance, Doc. No. 75-1 at 2. It is unreasonable for USDA to now state unequivocally that sending full benefits files was "unauthorized," and to require Plaintiffs to "undo" issuance of full benefits, while ignoring a prior court order and its own guidance to States.[6] At minimum, Defendants are required to "examine the relevant data and articulate a satisfactory explanation for [their] action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (cleaned up). They have not done so here. *See Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014) ("[C]onclusory statements will not do; an agency's statement must be one of *reasoning*." (cleaned up)).

*Second*, the November 8 letter represents an abrupt about-face, and Defendants failed to acknowledge that change in position. A day earlier, USDA said it was implementing full benefits and would "complete the processes necessary to make funds available." Nov. 7 USDA Guidance, Doc. No. 75-1 at 2. It did not tell Plaintiffs to withhold benefit issuance files, even though such transmission was necessary to effectuate the Rhode Island District Court's order. *See id.* And USDA knew Plaintiffs had begun issuing full benefits files to their vendors; it described as much in its stay application to the Supreme Court. *See* App.l'n for Stay, *Rollins v. R.I. State Council of Churches,* No. 25A539 (Nov. 7, 2025). Even after the Supreme Court's administrative stay, USDA did not retract its November 7 guidance for over 24 hours. It was not until the following evening that USDA completely changed course and demanded that States ***undo*** any benefit issuances,

---

[6] The Supreme Court's administrative stay—referenced in the November 8 letter in a paragraph discussing *prospective* transmissions of full benefits files—was not yet in effect when many Plaintiffs sent their full benefits files, so it cannot explain the letter's conclusion that prior transmissions were "unauthorized" and that States must "undo" them.

under threat of financial penalties. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (an agency must "display awareness that it *is* changing position" and cannot "depart from a prior policy *sub silentio*"); *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221-22 (2016) (an agency must display awareness of changing position and recognize reliance interests; unexplained inconsistency in a changed agency policy is arbitrary and capricious).

**Third**, Defendants "entirely failed to consider an important aspect of the problem." *State Farm*, 463 U.S. at 43. The November 8 guidance did not reflect consideration of the chaos and harm it would cause for Plaintiffs that reasonably relied on USDA's November 7 guidance and began the process of making full benefits available to SNAP beneficiaries. Nor did the November 8 guidance reflect consideration of the inherent difficulties—and, in some cases, the potential impossibility—of "undo[ing]" the "steps taken to issue full SNAP benefits." Plaintiffs were left to guess at what they were expected to do to avoid being penalized. The guidance provides no specifics as to what "undo[ing]" the issuance of benefits means in practice, particularly where benefits had already loaded onto recipients' EBT cards. Once benefit issuance files are sent to the vendor, there is not an established process for simply *un*sending. *See* Ex. 3, Moore Decl. ¶ 10; Ex. 5, Hoffman Decl. ¶ 15. And once benefits are on EBT cards, state agencies cannot simply push a button and retract or reduce those benefits—especially after many residents have already used those benefits to feed their families. *See* Ex. 9, Knezek Decl. ¶¶ 16-17. Even if such a process were possible, it would be extremely laborious for Plaintiffs and would cause dire consequences for SNAP recipients already desperate following days without benefits. In short, USDA's guidance is both vague and virtually impossible for Plaintiffs to comply with.

Further, USDA failed to consider the significant difficulty of "process[ing] and load[ing]" partial issuance files." USDA has already acknowledged in its response opposing emergency relief that requiring Plaintiffs to implement a partial benefits process would likely result in "substantial

chaos." Defs.' Opp., Doc. No. 18 at 21. It follows that forcing states to "immediately undo any steps taken to issue full SNAP benefits," *see* Nov. 8 USDA Guidance, Doc. No. 79-1 at 4, and then proceed with implementing a partial benefits process would result in substantially more chaos, at the expense of vulnerable SNAP beneficiaries who will have to bear the brunt of USDA's whiplash.

**Fourth,** USDA's November 8 guidance also failed to consider the States' reliance interests. *Rhode Island v. Trump*, 781 F. Supp. 3d 25, 47 (D.R.I. 2025) (failure to consider states' reliance on funding prior to grant terminations and layoffs was arbitrary and capricious). Many Plaintiffs understandably relied on the Rhode Island court order and/or USDA's November 7 guidance in transmitting full issuance files to EBT processors and communicating to residents that the benefits were available. *See, e.g.*, Ex. 2, Cole Decl. ¶¶ 12, 13; Ex. 8, Adelman Decl. ¶¶ 20-22. After all, USDA issued its November 7 guidance after it sought a stay of the Rhode Island District Court's decision and, after the Supreme Court issued an administrative stay, waited until the following evening to retract that guidance. "[B]ecause [the agency] was not writing on a blank slate . . . it was required to assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns." *Regents of Univ. of Cal.*, 591 U.S. at 33 (2020) (cleaned up). USDA did not do so.

**Finally**, the November 8 guidance is an abuse of discretion. Agency action constitutes an abuse of discretion where it "represents an unreasonable judgment in weighing relevant factors." *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005); *see also Dep't of Com. v. New York*, 588 U.S. 752, 773 (2019) (agency decision is an abuse of discretion where it does not fall "within the bounds of reasoned decisionmaking"). Forcing states to attempt to claw back benefits from vulnerable, hungry Americans and then implement a partial benefits system that could take months, when a viable alternative exists, is patently arbitrary and capricious.

**B.    Defendants' actions are contrary to law for reasons beyond those previously identified by Plaintiffs.**

Plaintiffs are likely to prevail in showing that the November 8 guidance violates the APA for reasons identified in Plaintiffs' prior filings, and for new reasons as well.

*First*, the November 8 guidance purports to revert USDA's authorizations back to the November 5 guidance—a directive that is contrary to law for reasons already presented to the Court. *See* Pls.' Mem. in Supp. of Motion for a Temporary Restraining Order, Doc. No. 4 at 13-14; Reply in Support of Their Motion for a Temporary Restraining Order, Doc. No. 68 at 6-9.

*Second*, USDA was not authorized, based only on an administrative stay, to demand that Plaintiffs retract issuances during the pendency of litigation. No statutory provision or regulation gives USDA the authority to mandate that state agencies affirmatively claw back already-issued benefits.

*Third*, USDA does not have authority under 7 C.F.R. § 271.7(h) to impose penalties on Plaintiffs—particularly during the pendency of the litigation—in retaliation for transmitting full benefit issuance files, for multiple reasons.

To begin, USDA may not impose penalties unless a state agency has "fail[ed] to comply with a directive to reduce, suspend or cancel allotments." 7 C.F.R. § 271.7(h). In this case, there was no suspension, reduction, or cancellation directive in effect at the time certain Plaintiffs transmitted full benefits issuance files to their EBT vendors. In particular, USDA's November 4 and 5 guidance had been enjoined by the District of Rhode Island's November 6 order. *R.I. State Council of Churches v. Rollins*, 1:25-cv-569 (D.R.I. 2025), Doc. No. 34 at 17-23 (holding that USDA's actions to award reduced benefits violated the court's prior order and were arbitrary and capricious). On top of that, USDA issued new guidance on November 7 that superseded its November 4 and 5 guidance and informed states that USDA was complying with the Rhode Island District Court order. Further, even after the Supreme Court administratively stayed the Rhode

Island district court's November 6 order, USDA left its November 7 guidance in effect for over 24 additional hours. In short, Plaintiffs did not violate any USDA directive.

Additionally, even if there were some reduction or suspension directive in effect (there was not), under 7 C.F.R. § 271.7(h)(1), USDA may not "cancel" the federal government's share of a state's administrative expenses unless USDA has first "ascertain[ed]" that the state agency did not plan to comply with a suspension or reduction directive *and* issued a "warning . . . advising the State agency" that it might cancel the federal government's share of a state's administrative expenses. Here, USDA was undoubtedly aware that after the Rhode Island District Court's order on November 6, several Plaintiffs were taking the steps necessary for USDA to comply with that order. USDA admitted as much in its request for a stay to the Supreme Court. *See* App.l'n for Stay, *Rollins v. Rhode Island State Council of Churches,* No. 25A539 (Nov. 7, 2025) (noting that full SNAP benefits had gone out to residents of at least Wisconsin, Kansas, and California). Instead of issuing any warning that USDA deemed these actions to violate any USDA directive, USDA reassured Plaintiffs in its November 7 guidance that it was complying with the Rhode Island District Court's November 6 order. Nov. 7 USDA Guidance, Doc. No. 75-1 at 2. 2.

Moreover, under 7 C.F.R. § 276.6(a) and (b), FNS "shall not suspend or disallow administrative funds nor seek injunctive relief to compel compliance with the provisions and standards" if "good cause" exists for a State's failure to comply "with provisions of the Act, the regulations issued pursuant to the Act, or the FNS-approved State Plan of Operation." "Good cause" is assessed based on a number of criteria, including whether there has been a "[c]hange in SNAP or other Federal or State programs that result in a substantial adverse impact upon a State agency's management of the Program," as well as "[a]ny other circumstances in which FNS determines good cause to exist." 7 C.F.R. § 276.6(a)(3)-(4).

Assuming there was a violation here (there was not), such good cause plainly exists. Defendants have repeatedly conceded that Plaintiffs will and have faced significant administrative and financial burdens in attempting to administer SNAP during the lapse in federal appropriations. And what was already a "substantial adverse impact" is now multiplied tenfold by threats to cancel administrative funding or disgorge millions of dollars placed in the hands of eligible SNAP recipients—all because Plaintiffs acted consistently with the Rhode Island District Court's order and USDA's November 7 guidance. Moreover, there can be no doubt that Defendants' rapid-fire changes in guidance, combined with the unprecedented nature of this crisis, are sufficient to find "good cause." Thus, even if this Court is inclined to leave intact Defendants' order to "undo" full issuances, it should find that USDA cannot reduce, suspend, or disallow administrative funds, or seek injunctive relief to compel compliance with the provisions and standards, in connection with Plaintiffs' administration of SNAP benefits for the month of November 2025.

*Fourth*, even if the regulations did permit such penalties, USDA is equitably estopped from penalizing the Plaintiff for acting pursuant to the November 6 order and USDA's own November 7 guidance. The Defendants are estopped from bringing a claim or defense where (1) the government engaged in affirmative misconduct going beyond mere negligence; (2) the government made a knowing false representation or concealment of material facts to a party ignorant of the facts with the intention that the other party should rely on it; and (3) the wrongful acts must cause a serious injustice and the public's interest must not suffer undue damage by the imposition of estoppel. *Patel v. Johnson*, 2 F. Supp. 3d 108, 126 (D. Mass. 2014). Here, on November 7, USDA affirmatively represented to state agencies that it was actively working to comply with the Rhode Island District Court's order and issue full benefits. Nov. 7 USDA Guidance, Doc. No. 75-1 at 2 (USDA would "complete the processes necessary to make funds available to support [states'] subsequent transmittal of full issuance files to [states'] EBT

processors" later that day). Knowing that Plaintiff States were facing an emergency caused by its illegal refusal to fund SNAP benefits, and by delays in the issuance of benefits caused by USDA's shifting regulatory guidance, USDA nonetheless declined to inform Plaintiffs that it would seek to recoup distributions made pursuant to its November 7 guidance if the Rhode Island District Court's order was stayed. It withheld this fact from Plaintiff States even as Defendants actively pursued an emergency appeal and requested to stay the Rhode Island District Court's order the same day. *See* Emergency Motion for Stay Pending Appeal and Immediate Administrative Stay, *R.I. State Council of Churches v. Rollins*, No. 25-2089 (1st Cir. Nov. 7, 2025).

Defendants cannot, on the one hand, inform Plaintiffs that they "will" facilitate the emergency relief the Plaintiffs sought, and then, on the other hand, demand that Plaintiffs "undo" all actions taken in reliance on that representation the next day, on pain of enormous financial penalties. Nov. 7 USDA Guidance, Doc. No. 75-1 at 2; Nov. 8 USDA Guidance, Doc. No. 79-1 at 4. Based on the timing of the emergency appeal, as well as USDA's deliberate delay in retracting its November 7 guidance through issuance of a threat to penalize Plaintiffs for issuing the benefits USDA said it would facilitate, it is clear USDA intended to whipsaw the Plaintiffs yet again. USDA's intentionally misleading conduct cannot be countenanced. The Court should enjoin USDA from penalizing Plaintiffs for issuing benefits the Defendants themselves pledged to facilitate.

## II.    Plaintiffs will be irreparably harmed absent a TRO.

As explained in previous filings, *e.g.*, Doc. Nos. 4, 68, USDA's delay in providing essential SNAP benefits has already triggered a cascade of irreparable harms to Plaintiffs. These harms include not only the delay of critical benefits to households, but also the imposition of severe operational challenges on affected state agencies—an injury compounded by USDA's conflicting guidance letters and repeated changes in course. These harms also include damage to the reputation

of state agencies shouldering the burden of communicating and explaining USDA's inconsistent directives to their residents, and potentially long-lasting harms to state healthcare and educational systems. *See* Doc. No. 4 at 17-20.

USDA's November 8 guidance multiplies these harms by asking Plaintiffs to "undo any steps taken to issue full SNAP benefits for November 2025" or risk "cancellation of the Federal share of State administrative costs" and "liab[ility] for any overissuances." Nov. 8 USDA Guidance, Doc. No. 79-1 at 4-5. The November 8 letter provides no guidance regarding the "steps" Plaintiffs must take to avoid the threatened cancellations or liability, placing Plaintiffs in an untenable position. Should any Plaintiff attempt to comply with the USDA's vague mandate, it will face serious administrative hurdles. As an initial matter, there is no system for retrieving November 2025 SNAP benefits once issuance files are submitted to EBT vendors and loaded onto recipient EBT cards. *See supra* at 8-9; *see also, e.g.*, Ex. 1, Morishige Decl. ¶¶ 29-31; Ex. 2, Cole Decl. ¶¶ 19-22; Ex. 3, Moore Decl. ¶ 10; Ex. 4, Whiteside-Hicks Decl. ¶¶ 5-7; Ex. 5, Hoffman Decl. ¶ 15. Moreover, any attempt to claw back essential SNAP funds would be cruel, raise potential due process concerns (and corresponding legal risk), and irrevocably damage the reputation of state agencies and faith in the SNAP system. *See also Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 20 (1st Cir. 1996) ("By its very nature injury to goodwill and reputation is not easily measured or fully compensable in damages. Accordingly, this kind of harm is often held to be irreparable."). This loss of trust between state agencies and beneficiary recipients is also likely to decrease SNAP enrollments, which in turn will cause irreparable harm in the form of increased healthcare and safety net costs and the expending of resources to rebuild trust in the public agency. *See* Ex. 1, 1, Morishige Decl. ¶¶ 35-38; Ex. 2, Cole Decl. ¶¶ 23-29; *see also* Doc. No. 4 at 7.

The November 8 letter also irreparably harms any Plaintiff that fails to fulfill the USDA's vague and contradictory demands. To the extent the Defendants seek to recoup the delta between partial and full benefits, that delta represents a demand to return hundreds of millions of dollars in aggregate. *See, e.g.*, Ex. 1, Morishige Decl. ¶ 31. The consequence of such a demand will be serious economic harm to Plaintiffs. Cancellation of administrative funding will also have significant impacts on state agencies and their residents, including potential staff layoffs or redirection of staff to non-SNAP duties, which will in turn decrease resources available to assist SNAP recipients seeking to access benefits and erode trust between state agencies and their residents. *See, e.g.*, Ex. 1, Morishige Decl. ¶¶ 33-35; Ex. 2, Cole Decl. ¶¶ 25-29; Ex. 3, Moore Decl. ¶¶ 12-13. *See also E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021) (holding "a significant change in [a state's] programs and a concomitant loss of funding . . . constitute irreparable injuries"). In short, the USDA's November 8 letter puts Plaintiffs in an impossible catch-22, in which both action and inaction risk dire consequences for state agencies and their residents. That is irreparable harm.

## III.    The equities resoundingly favor a TRO to protect states and their residents from the ongoing chaos created by Defendants' actions.

As explained in previous filings, Doc. No. 4 at 20-21 and *supra* § II, the public consequences stemming from delay in providing full SNAP benefits cannot be overstated. Millions of Plaintiffs' residents have and will continue to suffer without essential SNAP benefits to pay for food. *See also* Eric Adelson, et al., *Down to $1.18: How Families Are Coping With SNAP Cuts*, N.Y. TIMES (Nov. 7, 2025).[7] Moreover, the constantly shifting public statements of USDA have meant that Plaintiffs are in the position of trying to dispel confusion and misinformation created by the chaotic and contradictory positions USDA has taken. Defendants' only response has been

---

[7] https://www.nytimes.com/2025/11/07/us/politics/snap-benefits-cuts-shutdown.html, also available at https://perma.cc/X5RH-ZEPP.

that making full benefits available to SNAP beneficiaries will generate an "unacceptable deficit" in emergency Child Nutrition Programs funds, which could present operational difficulties if those funds are needed at some unspecified future date. Doc. No. 77 at 19-20. The Rhode Island District Court has already found this argument to be "contrary to the evidence" and "pretextual." *R.I. State Council of Churches v. Rollins*, 1:25-cv-569 (D.R.I. 2025), Doc. No. 34 at 23-24. This argument ignores that millions of Americans, including 16 million children, have already been delayed in accessing their SNAP benefits to pay for food. And importantly, it provides no justification for the USDA's November 8 guidance, which created even more uncertainty regarding the amount of benefits that will be made available to beneficiaries and when. The equities and public interest therefore weigh in favor of enjoining the November 8 guidance.

## CONCLUSION

For these reasons, the Court should enter a temporary restraining order enjoining the November 8, 2025 directive, including any actions to implement or enforce that directive or actions to penalize Plaintiffs from not complying with that directive.

Dated: November 9, 2025

Respectfully submitted,

ANDREA JOY CAMPBELL
Attorney General of Massachusetts

/s/ Michelle Pascucci
MICHELLE PASCUCCI (BBO #690889)
VANESSA ARSLANIAN (BBO #688099)
State Trial Counsel
LIZA HIRSCH (BBO #683273)
Chief, Children's Justice Unit
CASSANDRA THOMSON (BBO #705942)
RAUVIN JOHL (BBO #698719)
PETER WALKINGSHAW (BBO # 692314)
JAK KUNDL (BBO #713951)
Assistant Attorneys General
KATHERINE DIRKS (BBO #673674)
Chief State Trial Counsel
ANNA LUMELSKY (BBO #677708)
Deputy State Solicitor
Office of the Massachusetts Attorney
General
1 Ashburton Place Boston, MA 02108
(617) 963-2255
michelle.pascucci@mass.gov
cassandra.thomson@mass.gov
Attorneys for Plaintiff Commonwealth of
Massachusetts

ROB BONTA
Attorney General of California
PAUL STEIN*
Supervising Deputy Attorney General

/s/ Maria F. Buxton
MARIA F. BUXTON*
CHRISTOPHER KISSEL*
LIAM O'CONNOR*
RYAN EASON*
SEBASTIAN BRADY*
WILLIAM BELLAMY
DEPUTY ATTORNEYS GENERAL
Attorneys for Plaintiff State of California

KEITH ELLISON
Attorney General of Minnesota

/s/ Joseph R. Richie
JOSEPH R. RICHIE*
Special Counsel
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 300-0921
joseph.richie@ag.state.mn.us
Attorneys for Plaintiff State of Minnesota

KRISTIN MAYES
Attorney General of Arizona

/s/ Luci D. Davis
JOSHUA D. BENDOR (AZ NO. 031908)*
Solicitor General
HAYLEIGH S. CRAWFORD (AZ NO.
032326)*
Deputy Solicitor General
LUCI D. DAVIS (AZ NO. 035347)*
Senior Litigation Counsel
2005 N. Central Ave. Phoenix, AZ 85004
(602) 542-3333
Joshua.Bendor@azag.gov
Hayleigh.Crawford@azag.gov
Luci.Davis@azag.gov
ACL@azag.gov
Attorneys for Plaintiff State of Arizona

PHILIP J. WEISER
Attorney General of Colorado

*/s/ Tanja E. Wheeler*
TANJA E. WHEELER*
Associate Chief Deputy Attorney General
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203
Phone: (720) 508-6000
Tanja.wheeler@coag.gov
*Attorneys for Plaintiff State of Colorado*

WILLIAM TONG
Attorney General of Connecticut

*/s/ Patricia E. McCooey*
PATRICIA E. MCCOOEY*
Assistant Attorney General
165 Capitol Ave
Hartford, CT 06106
(860) 808-5020
Patricia.McCooey@ct.gov
*Attorneys for Plaintiff State of Connecticut*

KATHLEEN JENNINGS
Attorney General of Delaware

*/s/ Ian R. Liston*
IAN R. LISTON*
Director of Impact Litigation
VANESSA L. KASSAB*
Deputy Attorney General
ROSE E. GIBSON*
Assistant Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
Ian.Liston@delaware.gov
*Attorneys for Plaintiff State of Delaware*

BRIAN L. SCHWALB
Attorney General for the District of
Columbia

*/s/ Nicole S. Hill*
NICOLE S. HILL*
Assistant Attorney General
Office of the Attorney General for the
District of Columbia
400 Sixth Street, NW
Washington, D.C. 20001
(202) 727-4171
Nicole.hill@dc.gov
*Attorneys for Plaintiff District of Columbia*

ANNE E. LOPEZ
Attorney General of Hawaiʻi

/*s/ Kalikoʻonālani D. Fernandes*
DAVID D. DAY*
Special Assistant to the Attorney General
KALIKOʻONĀLANI D. FERNANDES*
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov
*Attorneys for Plaintiff State of Hawaiʻi*

KWAME RAOUL
Attorney General of Illinois

*/s/ Harpreet K. Khera*
HARPREET K. KHERA*
Bureau Chief, Special Litigation
ALICE L. RIECHERS*
Assistant Attorney General
115 S. LaSalle St., 35th Flr.
Chicago, Illinois 60603
(773) 590-7127
Harpreet.Khera@ilag.gov
*Attorneys for Plaintiff State of Illinois*

LAURA KELLY, in her official capacity as
Governor of the State of Kansas

*/s/ Justin Whitten*
JUSTIN WHITTEN*
General Counsel
ASHLEY STITES-HUBBARD*
Deputy Chief Counsel
Office of the Kansas Governor
300 SW 10th Ave, Room 541-E
Topeka, KS 66612
(785) 296-3930
Justin.h.whitten@ks.gov
Ashley.stiteshubbard@ks.gov
*Counsel for Governor Laura Kelly*

OFFICE OF THE GOVERNOR *ex rel.* Andy
Beshear, in his official capacity as
Governor of the Commonwealth of
Kentucky

*/s/ S. Travis Mayo*
S. TRAVIS MAYO*
General Counsel
TAYLOR PAYNE
Chief Deputy General Counsel
LAURA C. TIPTON
Deputy General Counsel
Office of the Governor
501 High Street
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov
*Attorneys for Plaintiff Kentucky Governors'
Office*

AARON M. FREY
Attorney General of Maine

*/s/ Brendan Kreckel*
BRENDAN KRECKEL*
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 0433-0006
Tel.: 207-626-8800
Fax: 207-287-3145
brendan.kreckel@maine.gov
*Attorneys for Plaintiff State of Maine*

ANTHONY G. BROWN
Attorney General of Maryland

*/s/ James C. Luh*
JAMES C. LUH*
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6411
jluh@oag.state.md.us
*Attorneys for Plaintiff State of Maryland*

DANA NESSEL
Attorney General of Michigan

*/s/ Neil Giovanatti*
NEIL GIOVANATTI*
DANIEL PING*
Assistant Attorneys General
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov
PingD@michigan.gov
*Attorneys for Plaintiff State of Michigan*

AARON D. FORD
Attorney General of Nevada

*/s/ K. Brunetti Ireland*
K. BRUNETTI IRELAND*
Chief of Special Litigation
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
kireland@ag.nv.gov
*Attorneys for Plaintiff State of Nevada*

MATTHEW J. PLATKIN
Attorney General of New Jersey

/s/ *Kashif T. Chand*
KASHIF T. CHAND (NJ BAR NO.
016752008)*
Assistant Attorney General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
kashif.chand@law.njoag.gov
*Attorneys for Plaintiff State of New Jersey*

RAÚL TORREZ
Attorney General of the State of New
Mexico

*/s/ Anjana Samant*
ANJANA SAMANT*
Deputy Counsel
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
505-270-4332
asamant@nmdoj.gov
*Attorneys for the State of New Mexico*

LETITIA JAMES
Attorney General of New York

*/s/ Molly Thomas-Jensen*
MOLLY THOMAS-JENSEN*
Special Counsel
MARK LADOV*
Special Counsel
28 Liberty St.
New York, NY 10005
(212) 416-8240
molly.thomas-jensen@ag.ny.gov
Mark.ladov@ag.ny.gov
*Attorneys for Plaintiff State of New York*

JEFF JACKSON
Attorney General of North Carolina

LAURA HOWARD
Chief Deputy Attorney General

*/s/ Adrian Dellinger*
ADRIAN DELLINGER*
Assistant Attorney General
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
(919) 716-6813
ADellinger@ncdoj.gov
*Counsel for State of North Carolina*

DAN RAYFIELD
Attorney General of Oregon

By: */s/ Leanne Hartmann*
    LEANNE HARTMANN, Mass. BBO
    #667852
    Senior Assistant Attorney General
    Oregon Department of Justice
    100 SW Market Street
    Portland, OR 97201
    Tel (971) 673-1880
    Fax (971) 673-5000
    Email:
    Leanne.Hartmann@doj.oregon.gov
*Attorneys for Plaintiff Oregon*

PETER F. NERONHA
Attorney General of Rhode Island

/S/ *Madeline R. Becker*
MADELINE R. BECKER (RI BAR NO.
10034)*
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2151
mbecker@riag.ri.gov
*Attorneys for Plaintiff State of Rhode
Island*

JOSHUA L. KAUL
Attorney General of Wisconsin

*/s/ Faye B. Hipsman*
FAYE B. HIPSMAN*
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
608-264-9487
faye.hipsman@wisdoj.gov
*Attorneys for Plaintiff State of Wisconsin*

*\* pro hac vice forthcoming*

JOSH SHAPIRO, in his official capacity as
Governor of the Commonwealth of
Pennsylvania

JENNIFER SELBER
General Counsel

*/s/ Jacob B. Boyer*
JACOB B. BOYER
Deputy General Counsel
Pennsylvania Office of the Governor
30 N. 3rd St., Suite 200
Harrisburg, PA 17101
(717) 460-6786
jacobboyer@pa.gov
*Counsel for Governor Josh Shapiro*

NICHOLAS W. BROWN
Attorney General of Washington

*/s/ William McGinty*
WILLIAM MCGINTY, WSBA #41868
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744
william.mcginty@atg.wa.gov
*Attorneys for Plaintiff State of Washington*

CHARITY R. CLARK
Attorney General for the State of Vermont

*/s/ Ryan P. Kane*
RYAN P. KANE
Deputy Solicitor General
109 State Street
Montpelier, VT 05609
(802) 828-2153
Ryan.kane@vermont.gov
*Attorneys for Plaintiff State of Vermont*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Michelle Pascucci