# EXHIBIT 2

# EXHIBIT 2

## SECOND DECLARATION OF MICHAEL COLE

I, Michael Cole, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows in further support of Plaintiffs' request for emergency injunctive relief:

1. I am a resident of the Commonwealth of Massachusetts. I am over the age of 18 and understand the obligations of an oath.

**Professional and Agency Background**

2. I am currently the Acting Commissioner of the Massachusetts Department of Transitional Assistance (DTA), a position I have held since September 2025. Immediately before assuming this role, I served as DTA's Chief Operating Officer. Between 2014 and 2024, I held several other titles within DTA, including Deputy Commissioner for Policy and Programs, and Assistant Commissioner for Organizational Effectiveness.

3. I make this declaration in my official capacity at DTA, based on personal knowledge and on my review of information and records gathered by agency staff.

4. DTA operates as the Commonwealth's primary agency for administering public assistance programs, with a statutory mission to assist and empower low-income individuals and families to meet their basic needs, improve their quality of life, and achieve long-term economic self-sufficiency. DTA administers a comprehensive portfolio of both state- and federally-funded programs, including but not limited to the Supplemental Nutrition Assistance Program (SNAP), which provides 100% federally-funded food assistance to, among others, families with children, older adults, and persons with disabilities; the Healthy Incentives Program (HIP), a state-funded initiative that incentivizes SNAP recipients to purchase local produce; Transitional Aid to Families with Dependent Children (TAFDC), a state- and federally-funded program operating

under the federal Temporary Assistance for Needy Families (TANF) block grant that provides financial assistance and employment programming with work requirements; Emergency Aid to the Elderly, Disabled, and Children (EAEDC), a state-funded program serving elderly and disabled adults and children; and state-funded State Supplemental Payments (SSP) to Supplemental Security Income (SSI). The agency operates employment services through its "Pathways to Work" programs, which connect TAFDC and SNAP clients to career pathways, education, and training opportunities designed to promote economic mobility and sustained employment. DTA maintains rigorous program integrity standards through advanced analytics and fraud detection practices.

5. As of October 2025, DTA operates through a workforce of approximately 1,900 employees, with over 80% deployed across 21 local transitional assistance offices throughout the Commonwealth, supported by specialized units including but not limited to program integrity investigators, administrative hearing officers, and policy specialists.

**Recent USDA Actions**

6. SNAP, one of the programs administered by DTA, involves the issuance of monthly electronic benefits, funded by the federal government, that can be used to purchase food at authorized retail stores.

7. On the morning of Tuesday, November 4, 2025, DTA received a guidance document from USDA on the subject of SNAP Benefit and Administrative Expenses for November 2025, as well as SNAP Reduced Allotment tables, reflecting a 50% reduction in maximum allotments to eligible families. On the evening of Wednesday, November 5, 2025, DTA received additional guidance from USDA, with new and "revised" SNAP Reduced Allotments tables, reflecting a 35% reduction in maximum allotments.

8. To implement the guidance and revised tables (either at 50% or 65%), DTA had to rerun eligibility for every SNAP household in Massachusetts for November 2025. DTA began that work upon receiving the first reduced allotment tables on November 4, 2025, and pivoted to incorporate the new reduced allotment tables that USDA released on November 5, 2025. This exercise required a massive amount of technical work and benefits calculation and re-calculation; yet DTA was well into the process of preparing partial benefit files for its Vendor by November 6, 2025.

9. On November 6, 2025, DTA became aware that the U.S. District Court for the District of Rhode Island issued a temporary restraining order, ordering the federal government, in pertinent part, "to make full payments of November SNAP benefits to the states by Friday, November 7, 2025," in the case of *Rhode Island State Council of Churches, et al. v. Rollins, et al.*, C.A. No. 25-cv-569-JJM-AEM (*Rhode Island v. Rollins*).

10. On November 7, 2025, at approximately 12:47 p.m. ET, DTA received yet another guidance document from USDA regarding November SNAP. This guidance was signed by USDA Deputy Under Secretary Patrick A. Penn and addressed to all SNAP Agency Directors, with the subject line "Updated Supplemental Nutrition Assistance Program (SNAP) November Benefit Issuance."

11. The November 7, 2025 guidance states, in pertinent part: "FNS is working towards implementing November 2025 full benefit issuances in compliance with the November 6, 2025, order from the District Court of Rhode Island. Later today, FNS will complete the processes necessary to make funds available to support your subsequent transmittal of full issuance files to your EBT processor."

12. In reliance upon the District Court of Rhode Island's temporary restraining order and USDA's November 7, 2025 guidance, on the afternoon of November 7, 2025, DTA began sending tranches of November issuance files (including full benefit data for some beneficiary segments and daily issuance data) to its Vendor. By the evening of November 7, 2025, these November issuance files had been processed by DTA's Vendor and DTA no longer had the ability to stop the issuance.

13. DTA took these prompt actions in reliance upon the *Rhode Island v. Rollins* temporary restraining order and USDA's November 7, 2025 guidance because of the urgent need for SNAP recipients to access benefits needed to purchase food for their households.

14. Later on November 7, 2025, at approximately 9:30 p.m. ET, DTA became aware of an administrative stay of the *Rhode Island v. Rollins* temporary restraining order issued by U.S. Supreme Court Associate Justice Ketanji Brown Jackson.

15. DTA did not receive any further communications from USDA on November 7, 2025.

16. On the morning of November 8, 2025, DTA's Vendor confirmed that benefits for certain SNAP recipients (generally, those whose benefits were previously delayed between November 1 and 7) had successfully loaded onto SNAP recipient EBT cards and those benefits were available to use.

17. On November 8, 2025, at 9:54 p.m. ET, USDA sent a memorandum notifying DTA and other SNAP state agencies that the United States Supreme Court (SCOTUS) had granted USDA an administrative stay of the November 6, 2025 order in *Rhode Island v. Rollins*, that required USDA to make funds available and pay full benefits for the month of November 2025.

4

18. The November 8, 2025 USDA memorandum states in pertinent part:

> The U.S. Supreme Court granted the U.S. Department of Agriculture an administrative stay of the orders issued by the District Court of Rhode Island in Rhode Island State Council of Churches, et al. v. Rollins, 25-cv-569. Pending any explicit direction to the contrary from Food and Nutrition Service (FNS), States must not transmit full benefit issuance files to EBT processors. Instead, States must continue to process and load the partial issuance files that reflect the 35 percent reduction of maximum allotments detailed in the November 5 guidance.
>
> To the extent States sent full SNAP payment files for November 2025, this was unauthorized. Accordingly, States must immediately undo any steps taken to issue full SNAP benefits for November 2025. Please advise the appropriate FNS Regional Office representative of steps taken to correct any actions taken that do not comply with this memorandum.
>
> Per 7 CFR 271.7(h), failure to comply with this memorandum may result in USDA taking various actions, including cancellation of the Federal share of State administrative costs and holding States liable for any overissuances that result from the noncompliance.

**<u>Limited Options for Change of Course</u>**

19. To my knowledge, USDA has never asked DTA to "undo" the process for issuing benefits to SNAP recipients. Yet according to the November 8, 2025 memorandum from the USDA, failure to undo steps taken to issue full November SNAP benefits for hundreds of thousands of households could result in cancellation of the Federal share of state administrative costs and potential financial penalties—upwards of $106 million.

20. At this time, DTA has no system options for withdrawing November 2025 issuance files from its EBT vendor before payments would be issued or removing benefits loaded onto SNAP recipient EBT cards.

21. DTA also lacks the technical capability to simply change the amount of benefits for the hundreds of thousands of SNAP households included in the issuance files sent to the Vendor. The only way for DTA to alter the benefits in the issuance files already sent to the vendor would be to go through the time-consuming and complicated process of creating new

5

files to cancel the previously submitted ones – a process that has not been undertaken previously by existing teams and would require multiple teams working to identify and test the files. Then to ensure that SNAP recipients had funds available to buy food this week, DTA would have to re-calculate their benefits and create new issuance files aligned with the 65% reduced allotment tables. All of this would take an incredible amount of time and person-power to execute.

22. After an issuance has been accepted by the Vendor and benefits are loaded onto an EBT card, benefits generally are available to recipients at retailer point of sale machines, and retailers are reimbursed for EBT transactions by their financial intermediaries and/or the Vendor. A great many parties, including recipients who may be afraid to access their benefits, retailers who may not be reimbursed for sales, Third Party Processor(s), and EBT vendors who may not be able to draw down federal funds as expected, are hanging in the balance today due to USDA's conflicting guidance on November SNAP benefits.

**Further Threatened Harm for Residents of Massachusetts and the State**

23. In addition to the potential financial impact that Massachusetts would suffer if expected to cover November SNAP distributions, any USDA sanctions that touch the federal portion of state SNAP administrative costs will necessarily impact SNAP case workers and recipients.

24. To properly effectuate its safety net programs, DTA has devoted years of work to overcome stigma, misinformation, and other barriers to access. DTA is the representative of the broader SNAP framework to Massachusetts residents. DTA has fostered trust with Massachusetts residents and stakeholders by representing to them that SNAP eligibility and compliance with programmatic requirements will lead to timely and full benefits issuance. SNAP benefits directly

fund one of the most crucial basic human needs: access to food. Failure to deliver on that basic need as promised is a deep violation of residents' trust.

25. Furthermore, loss of trust among Massachusetts residents will likely lead to decreased SNAP enrollments, which in turn will cause irreparable long-term harm and costs to the State in the form of increased healthcare and safety net costs, and expending of resources to rebuild trust in the public agency. USDA has acted in disregard of those reliance interests of Massachusetts.

26. If USDA were to cancel the Federal share of state administrative costs or impose other financial penalties on DTA for issuing full November SNAP benefits, DTA would experience administrative strain that would impact its ability to effectively serve low-income households in the Commonwealth.

27. DTA is already spending significant administrative resources managing communications and inquiries regarding the availability of SNAP benefits in November 2025. These communications are occurring, among other things, over call lines and in meetings with constituents and other stakeholders. Approximately 11 administrative staff members have already been required to absorb this administrative burden to handle shutdown-related concerns, in lieu of other important initiatives such as implementing new SNAP requirements under H.R.1.

28. DTA also anticipates increased foot traffic and disruptions at Massachusetts local SNAP offices as individuals and families seeking help are informed about possible reductions to their benefits and conflicting guidance from USDA. Many of these local office staff will face significant burdens on their time. Increased communication demands will likely require DTA to incur additional administrative burdens in the form of overtime pay to the limited staff available to handle this workload.

29.     In short, USDA's November 7, 2025 guidance to "undo" full SNAP benefits and threats to penalize Massachusetts for issuing full November payments will ultimately and swiftly, once again, impact the ability of Massachusetts residents to obtain food they need.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 9th day of November 2025, in Boston, Massachusetts.

*Michael A. Cole*

Michael Cole
Acting Commissioner
Massachusetts Department of Transition Assistance