EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

COMMONWEALTH OF MASSACHUSETTS; et al.,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
AGRICULTURE; et al.,

Defendants.

Case No. 1:25-cv-13165

## DECLARATION OF ABBY MCCLELLAND

I, **Abby McClelland**, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am a resident of the State of Colorado. I am over the age of 18 and understand the obligations of an oath.

2. I am the director of the Food and Energy Assistance Division within the Colorado Department of Human Services (CDHS or Agency), which includes the Supplemental Nutrition Assistance Program (SNAP).

3. I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

4. CDHS supports people in every county in Colorado by connecting them with assistance, resources, and support at every stage of their lives. The Agency serves Coloradans through bold and innovative health and human services. And together, CDHS empowers Coloradans to thrive. The Office of Economic Security, which includes the Food and Energy Assistance Division, provides benefits assistance, including SNAP, to ensure Coloradans have what they need to live a stable life. These benefits programs help Colorado families consistently

1

put food on the table, heat their homes, find livable-wage work, and afford basic necessities. SNAP, one of the programs administered by CDHS, involves the issuance of monthly electronic benefits to Coloradans in every county that can be used to purchase food at authorized retail stores.

5.    SNAP is a key part of Colorado's efforts to address hunger by supplementing the food budget of low-income families so they can purchase healthy food. In 2024, an average of 594,526 people, across approximately 300,000 households, received SNAP benefits in Colorado each month, including over 300,000 children and about 114,000 elderly individuals. More than $1.4 billion in SNAP benefits were issued during 2024 in Colorado. Households in Colorado receive on average around $363 per month in SNAP benefits to meet their basic subsistence and nutritional needs. During the federal fiscal year between January 1, 2025 and September 30, 2025, CDHS issued approximately $120,583,598 per month in SNAP benefits in Colorado.

6.    Colorado's SNAP program is county implemented, and state supervised and administered. CDHS administers the SNAP program in Colorado pursuant to § 26-2-301(1), C.R.S. Pursuant to federal law, CDHS administers SNAP on behalf of the United States Department of Agriculture (USDA) and is responsible for the issuance, control, and accountability of SNAP benefits and Electronic Benefit Transaction (EBT) cards; ensuring program integrity; and supervising local transitional assistance offices' day-to-day administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households. 7 U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2. USDA funds the entirety of SNAP benefits in Colorado, though Colorado and the federal government split administrative costs. 7 U.S.C. § 2025(a).

7.    Colorado expends nearly $200 million in administrative costs to run its SNAP program each year, approximately $100 million of which is reimbursed by the federal government, to pay state staff, support a state case management system for benefits, and hire a

2

vendor. CDHS has a contract with a financial services vendor, Fidelity National Information Services, Inc. ("FIS" or "Vendor"), to provide EBT processing services for SNAP, Temporary Assistance for Needy Families (TANF) cash benefits, and other state-funded CDHS programs. These services include processing benefit authorizations provided by CDHS; managing the accounts through which those benefits are made available to recipients; and processing the financial transactions that transmit payments to retailers that accept payments from those accounts.

8.    The Vendor's invoices for its services rendered under its contract with CDHS are paid by Colorado. Each month, CDHS's Vendor, on behalf of Colorado and USDA, loads the full value of each household's monthly SNAP benefit allotment into the household's account. The household members access their account by using their EBT card to purchase food in a similar manner to the way one uses a debit card.

9.    As part of the SNAP administration process, CDHS is required to regularly transmit various types of electronic benefit issuance data files ("benefit files") to its Vendor. These benefit files contain information related to individuals who have been determined eligible for SNAP benefits, and the benefit level for that individual, alongside other information. CDHS sends multiple benefit files to the Vendor, including monthly files for active SNAP recipients. Further, CDHS sends benefit files for SNAP recipients newly approved that month, a subset of which are individuals who have been approved for expedited SNAP benefits.

10. CDHS uses an in-house case management system to generate benefit files, among many other functions.

11. Once the Vendor receives the benefit files from CDHS, the Vendor uses that information to authorize benefits for SNAP recipients and to subsequently load the approved monthly SNAP benefit allotment on SNAP recipients' individual EBT cards. Recipients can then use their individual EBT cards to purchase food, as of the benefit availability date, at authorized

3

SNAP retailers.

12. U.S. Department of Agriculture's Food and Nutrition Service (USDA-FNS) manages the process of certifying retailers for participation in the SNAP program. SNAP recipients can only use their EBT card at approved retailers.

13. When SNAP recipients use their EBT card at a retailer's point of sale machine, an electronic message goes from the retailer's cash register to the Vendor to verify a variety of conditions, including the availability of funds. If the purchase is approved, the customer's EBT account is immediately debited, and the retailer's account gets credited. Neither CDHS nor any other state agency in Colorado ever receives SNAP benefit funds as part of this process.

14. In accordance with this process, CDHS transmits hundreds of benefit files a month to its Vendor pursuant to a preset, contractual transmission schedule.

15. CDHS normally requires lead time to process SNAP benefits prior to the month in which the benefits will be issued. The SNAP benefits file is transmitted to the Vendor four business days prior to the end of the month. For example, for SNAP benefits to be issued in November 2025, CDHS would normally be required to start transmission of relevant benefit files to the Vendor on October 28, 2025.

16. CDHS did not transmit benefits files for the month November 2025 on its normal schedule pursuant to an October 24, 2025 memorandum from USDA Deputy Under Secretary Patrick A. Penn informing Regional SNAP Directors and SNAP State Agency Directors that FNS is suspending all November 2025 SNAP benefits effective November 1, 2025, until such time as sufficient federal funding is provided or until FNS directs State agencies otherwise.

17. On Thursday, November 6, 2025, CDHS became aware that the U.S. District Court for the District of Rhode Island issued a temporary restraining order, ordering the federal government, in pertinent part, "to make full payments of November SNAP benefits to the states by Friday, November 7, 2025," in the case of *Rhode Island State Council of Churches, et al. v.*

*Rollins, et al.*, C.A. No. 25-cv-569-JJM-AEM.

18. On Friday, November 7, 2025, at approximately 10:42 a.m. in Colorado, CDHS received a memorandum from USDA-FNS, signed by USDA-FNS Deputy Under Secretary Patrick A. Penn, addressed to all SNAP Agency Directors, with the subject line "Updated Supplemental Nutrition Assistance Program (SNAP) November Benefit Issuance." A true and correct copy of this memorandum is attached hereto as **Exhibit 1**.

19. The November 7, 2025 memorandum states, in pertinent part: "FNS is working towards implementing November 2025 full benefit issuances in compliance with the November 6, 2025, order from the District Court of Rhode Island. Later today, FNS will complete the processes necessary to make funds available to support your subsequent transmittal of full issuance files to your EBT processor."

20. In reliance upon the Rhode Island temporary restraining order and USDA-FNS' November 7, 2025 memorandum, CDHS transmitted 32,214 full benefit files to the Vendor for the month of November 2025.

21. For those whose full benefit files were transmitted to the vendor, benefits have been loaded onto those SNAP recipients' EBT cards, who have been able to access their benefits. CDHS took these prompt actions in reliance upon the Rhode Island temporary restraining order and USDA-FNS' November 7, 2025 memorandum because of the urgent need for SNAP recipients to access benefits needed to purchase food for their households.

22. Later on November 7, 2025, at approximately 7:30 p.m. in Colorado, CDHS became aware of an administrative stay of the Rhode Island temporary restraining order issued by U.S. Supreme Court Associate Justice Ketanji Brown Jackson. By that time, all of the aforementioned approximately 38,000 full benefit files for the month of November 2025 had already been transmitted to the Vendor.

23. CDHS immediately stopped transmission of two additional full benefit files to the

Vendor. The first benefit file contained approximately 193,000 additional full benefit issuances and the second file contained approximately 60,000 full benefit issuances. In combination with the 32,000 files that were already sent, the three files contain the entirety of Colorado's SNAP caseload which includes 603,000 individuals across more than 300,000 households. The remaining two issuance files were not sent to Vendor.

24. CDHS did not receive any further communications from USDA-FNS on November 7, 2025.

25. On Saturday, November 8, 2025, at approximately 7:56 p.m. in Colorado, CDHS received a memorandum from USDA-FNS, signed by USDA-FNS Deputy Under Secretary Patrick A. Penn, addressed to all SNAP Agency Directors, with the subject line "Updated Supplemental Nutrition Assistance Program (SNAP) November Benefit Issuance." A true and correct copy of this memorandum is attached hereto as **Exhibit 2**.

26. The November 8, 2025 memorandum states in pertinent part:

> The U.S. Supreme Court granted the U.S. Department of Agriculture an administrative stay of the orders issued by the District Court of Rhode Island in *Rhode Island State Council of Churches, et al. v. Rollins,* 25-cv-569. Pending any explicit direction to the contrary from Food and Nutrition Service (FNS), States must not transmit full benefit issuance files to EBT processors. Instead, States must continue to process and load the partial issuance files that reflect the 35 percent reduction of maximum allotments detailed in the November 5 guidance.

> To the extent States sent full SNAP payment files for November 2025, this was unauthorized. Accordingly, States must immediately undo any steps taken to issue full SNAP benefits for November 2025. Please advise the appropriate FNS Regional Office representative of steps taken to correct any actions taken that do not comply with this memorandum.

> Per 7 CFR 271.7(h), failure to comply with this memorandum may result in USDA taking various actions, including cancellation of the Federal share of State administrative costs and holding States liable for any overissuances that result from the noncompliance.

27. CDHS, pursuant to USDA-FNS's direction, considered the possibility of unwinding the full benefits payments by, for example, consulting with vendors, but CDHS is not aware of any method to "undo any steps taken to issue full SNAP benefits for November 2025" for the

38,000 files that were transmitted.

28. The CDHS SNAP eligibility system does not have the ability to correct the amount issued for monthly benefits once the benefits have been authorized and sent to the Vendor. The inability of CDHS to correct the amount issued would lead to incorrect financial information reflected in the eligibility system of record, which would impact CDHS's ability to assess whether an overpayment has occurred.

29. As CDHS is not aware of any method to "undo . . . steps taken to issue full SNAP benefits for November 2025," CDHS would theoretically need to pursue overpayment procedures for all SNAP households that were issued the full monthly benefit amount, and which is estimated at over 32,000 households. The counties and CDHS would collect the overpayments through various means, including entering into repayment agreements with a SNAP recipient, reducing the amount of benefits a recipient receives for a future month, or through participation in the Treasury Offset Program (TOP). According to the November 8, 2025 memorandum from the USDA, failure to undo steps taken to issue full November SNAP benefits for the 38,000 households could result in cancellation of the Federal share of state administrative costs and potential financial penalties—upwards of $50 million.

30. CDHS anticipates that pursuit of overpayment claims against SNAP recipients would result in increased administrative burden to the supervised county departments administering the program in the state as a result of the manual processes required to establish an overpayment claim for over 32,000 cases. Additionally, CDHS anticipates that the level of operational resources needed to actively pursue over 32,000 overpayment claims will adversely impact the ability of counties to carry out daily eligibility functions and to effectively respond to corrective action plans to address timeliness and its payment error rate. Further, pursuing overpayment claims against SNAP recipients would be a manifest injustice. Beneficiaries should not incur liability or experience fear and stress for redeeming SNAP benefits to feed themselves and their

7

families.

31. Taking actions to collect on purported overpayments of November 2025 benefits would significantly erode trust between Colorado and its residents built over many years and through the dedication of significant resources. In particular, actively pursuing overpayments through repayment plans or reduction of future months' benefits will further strain the ability of already low-income households to purchase food for their families, including children, individuals with disabilities, people experiencing homelessness, veterans, and the elderly.

32. This situation will lead to a disparate distribution of benefits to Colorado beneficiaries due to the difference in benefit amounts between those who received full benefits from the November 7, 2025 issuance and those who will receive partial benefits based on current USDA guidance. Disparate distribution of benefits to only some qualifying recipients significantly undermines principles of fairness, erodes public trust in the government, and creates cruel hardship for those unjustly left out. It has also created significant confusion among clients about whether they received benefits, whether they will receive benefits, or whether they will not receive any benefits for November. CDHS has significant concerns that this chaotic situation will foster resentment and division in its community, and that it suggests an arbitrary and biased system.  Ensuring that all eligible Colorado residents receive the support they qualify for is essential to maintaining social cohesion and the legitimacy of the public benefit program.

33. To properly effectuate its safety net programs, CDHS has devoted years of work to overcome stigma, misinformation, and other barriers to access. CDHS is the representative of the broader SNAP framework to Colorado residents. If CDHS takes action to pursue overpayments that result in a reduction of benefits for recipients or delays in receiving benefits, recipients are likely to feel that CDHS has failed or engaged in wrongdoing. CDHS has fostered trust with Colorado residents and stakeholders by representing to them that SNAP eligibility and compliance with programmatic requirements will lead to timely and full benefits issuance.

8

SNAP benefits directly fund one of the most crucial basic human needs: access to food. Failure to deliver on that basic need as promised is a deep violation of residents' trust.

34. Furthermore, loss of trust among Colorado residents will likely lead to decreased SNAP enrollments, which in turn will cause irreparable long-term harm and costs to the State in the form of increased healthcare and safety net costs, and expending of resources to rebuild trust. USDA-FNS has acted in arbitrary disregard of those reliance interests of Colorado. The action to force the active pursuit of overpayments for over 38,000 households also unduly burdens CDHS's already limited administrative resources. Additionally, if USDA were to cancel the Federal share of state administrative costs or impose financial penalties CDHS would experience further administrative strain that would impact its ability to effectively serve low-income households in Colorado.

35. CDHS is already spending significant administrative resources managing communications and inquiries regarding the availability of SNAP benefits in November 2025. These communications are occurring, among other things, over call lines and in meetings with constituents and other stakeholders. Approximately 20 administrative staff members have already been required to absorb this administrative burden to handle shutdown-related concerns, in lieu of other important initiatives such as new requirements under H.R.1.

36. CDHS also anticipates increased foot traffic and disruptions at county SNAP offices as hungry individuals and families are informed about reductions to future month's benefits and the impacts of overpayments on their limited budgets, potentially necessitating increased security personnel presence. The client-facing local office staff at these counties will shoulder the painful burden of explaining to recipients why they were issued a full month of SNAP benefit and then promptly informed they will need to repay a portion of that benefit back, in addition to the broader loss of trust in CDHS. Many of these local office staff will face significant burdens on their time.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this __9th__ day of November, 2025, in Boulder, Colorado.

Abby McClelland
Division Director, Food & Energy Assistance
Colorado Department of Human Services