# EXHIBIT 8

## DECLARATION OF SARAH ADELMAN

I, Sarah Adelman, declare under penalty of perjury, pursuant to 28 U.S.C. Section 1746, as follows:

1. I am currently the Commissioner of the New Jersey Department of Human Services ("NJDHS"). I have been employed as Commissioner since January 2021. Prior to becoming the NJDHS Commissioner, I served as the NJDHS's Deputy Commissioner overseeing the Developmental Disabilities, Aging Services, and Medicaid Divisions. Before that, I served in management roles at a statewide health care organization.

2. I am familiar with the information in the statements set forth below either through personal knowledge, consultation with agency staff, or from my review of relevant documents and information.

3. I submit this declaration in support of the Plaintiffs' Second Amended Motion for a Temporary Restraining Order in *Massachusetts, et al. v. United States Department of Agriculture, et al.*, No. 1:25-cv-13165 (D. Mass). This declaration supplements my prior declarations in the same case on October 27 and November 5, 2025.

4. NJDHS is New Jersey's largest agency, serving approximately 2.1 million residents. These 2.1 million NJ residents include, but is are limited to: (a) older residents, individuals, and families with low incomes; (b) people with developmental disabilities, or late-onset disabilities; (c) people who are blind, visually impaired, deaf, hard of hearing, or deaf-blind; (d) parents needing child care services, child support and/or healthcare for children; (e) people who are dealing with addiction and mental health issues; and (f) families facing catastrophic medical expenses for their children. Through NJDHS's eight (8) divisions, the agency provides

numerous programs and services designed to give eligible individuals and families assistance with economic and health challenges.

5. NJDHS's Division of Family Development ("NJDFD") supervises four (4) programs to support New Jersey families, including New Jersey's Supplemental Nutrition Assistance Program ("NJ SNAP"), which helps provide food assistance to families with low incomes through the issuance of monthly electronic benefits that can be used to purchase food at authorized stores.

6. NJ SNAP functions as a key part of New Jersey's efforts to address hunger by supplementing the food budget of low-income families so they can purchase healthy food. In the 2024 calendar year, approximately $2 billion in NJ SNAP benefits were issued. As of August 2025, there were 812,966 persons receiving NJ SNAP, representing 436,452 households; 340,425 children; and 176,706 elderly individuals. NJ SNAP plays a critical role, through federal funding, to support NJ families in need of food assistance.

7. Pursuant to federal law, NJDHS is responsible for the issuance, control and accountability of SNAP benefits and Electronic Benefit Transaction ("EBT") cards; ensuring program integrity; and supervising New Jersey's 21 counties in their day-to-day administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households. 7. U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2.

8. NJDHS received the United States Department of Agriculture's (USDA) response to this Court's October 31, 2025 Order in *Massachusetts et al.* (ECF Nos. 48 and 48-1), which was filed on the docket on November 3, 2025. In that response, and in the accompanying declaration signed by Deputy Under Secretary Patrick A. Penn of the USDA, USDA advised that it was

"making all of the Contingency Funds available to the States for a partial payment" but that it was choosing "not to deplete other programs to fully fund this month's SNAP benefits."

9. Deputy Under Secretary Penn's declaration explained that, based on USDA's calculations, there would be "a total of $4.65 billion in the contingency fund for November SNAP benefits that will all be obligated to cover 50% of eligible households' current allotments" and that USDA was "prepared to issue such notice and revised issuance tables to State agencies on November 3, 2025." Finally, the declaration noted that "States will rely on the issuance tables to calculate the benefits due to each eligible household in their respective States."

10. On November 4, 2025, NJDHS received a Memorandum from USDA titled "Supplemental Nutrition Assistance Program (SNAP) Benefit and Administrative Expense Update for November 2025," as well as Reduced Allotment tables for November 2025.

11. The November 4, 2025 Memorandum advised that "[d]ue to the limited availability of Federal funding and orders from two Federal courts, the Food and Nutrition Service (FNS) is reducing SNAP maximum allotments to 50 percent of the eligible household's current allotment for November 2025 in accordance with 7 CFR 271.7."

12. The November 4, 2025 Memorandum further explained that: "State agencies must take immediate action to implement this reduction as specified in this memorandum and in accordance with 7 CFR 271.7. Please note that in applying the reduction, per Federal law, all one- and two- person households affected by the reduction shall receive the minimum monthly benefit as specified in the revised allotment tables. In addition, State agencies shall follow the procedures outlined in 7 CFR 271.7(d)(1)(ii) to provide for the rounding of benefit levels of $1, $3 and $5 to $2, $4 and $6, respectively."

13. After receiving the Memorandum and Reduced Allotment tables on November 4, 2025, NJDHS worked diligently to assess how quickly it could implement the changes USDA required in order to transmit issuance files for partial November 2025 benefits to Conduent State & Local Solutions, Inc. ("Conduent"), which is New Jersey's Electronic Benefits Transfer ("EBT") vendor. Through those conversations, NJDHS concluded based on the information available at that time that if it was required to re-code the system to account for USDA's Reduced Allotment tables, it would take approximately four to six weeks at a minimum before NJDHS could even begin transmitting issuances to Conduent, meaning that eligible SNAP recipients and households would have been deprived of SNAP benefits for virtually the entire month of November.

14. Furthermore, under this first set of Reduced Allotment tables, NJDHS concluded that some SNAP recipients would have received benefits in an amount far less than an actual 50% reduction, and some being ineligible to receive benefits at all. That is because under FNS' guidance, all newly eligible and ongoing cases must undergo a recalculation of benefits in accordance with 7 CFR 273.10(e)(2)(ii) subject to the new tables. In fact, after looking at a sample of 10,000 SNAP cases from July 2024, NJDHS concluded that under the first set of Reduced Allocation tables, the average SNAP household would receive an average of 38% of their total allotment. The total range spanned from 21% to 50%, and also would include some cases coming in at 0%, meaning that an otherwise eligible household would not receive benefits at all.

15. In light of these concerns and others, on November 5, 2025, Plaintiffs in this case sought additional relief from this Court, including for an Order holding Plaintiffs harmless in their administration of SNAP for the month of November, since any errors in issuances could rebound in the form of reduced, suspended, or canceled federal administrative costs as FNS engages in its regular quality control review of States' administration of SNAP.

16. The same date, at 9:35 p.m. Eastern Standard Time, after Plaintiffs sought relief from this Court and before NJDHS could take steps to implement the first set of Reduced Allotment tables, USDA issued yet another directive, this time in the form of a second set of Reduced Allotment tables. According to the Memorandum accompanying this second set of Reduced Allotment tables, these tables represented a reduction of 35% of benefits instead of 50% of benefits. This reduction was "effective immediately."

17. NJDHS immediately began exploring whether and how it could issue benefits in accordance with the second set of Reduced Allocation tables.

18. On November 6, 2025, as NJDHS continued its attempts to figure out whether and how it could issue benefits in accordance with the second set of Reduced Allocation, NJDHS became aware of the decision and Order from the District of Rhode Island in the case of *Rhode Island State Council of Churches, et al. v. Rollins, et al.*, Docket No. 1:25-cv-00569 (D.R.I.), ordering USDA "to make full payments of November SNAP benefits to the states by Friday, November 7, 2025, by utilizing available Section 32 funds in combination with the contingency funds." NJDHS also understood that USDA-FNS later sought an administrative stay and a stay pending appeal from the First Circuit, seeking relief from the District of Rhode Island's decision ordering it to fully fund November issuances.

19. On November 7, 2025, at 12:43 p.m. while USDA-FNS's appeal to the First Circuit was pending and before the First Circuit ruled, NJDHS received another Benefits Guidance update directly from its Regional FNS office. This Benefit Guidance update advised all SNAP Agency Directors that "FNS is working towards implementing November 2025 full benefit issuances in compliance with the November 6, 2025, order from the District Court of Rhode Island. Later today,

FNS will complete the processes necessary to make funds available to support your subsequent transmittal of full issuance files to your EBT processor."

20. The November 7, 2025 Guidance did not advise that any further guidance or instructions would be forthcoming.

21. The same date, NJDHS transmitted full November issuances, totaling approximately $158,000,000 to Conduent for processing. These issuances were fully processed almost immediately, and SNAP recipients began using November benefits on their cards the same afternoon.

22. In reliance on the November 7 Guidance, NJDHS told NJ SNAP recipients and the public that full benefits were available on their cards and that they should check the balances before spending benefits.

23. On November 7, 2025, shortly after 6:00 p.m., the First Circuit denied an administrative stay.

24. On November 7, 2025, at 9:30 p.m. Eastern Standard Time, NJDHS became aware that the Supreme Court granted USDA-FNS's request for an administrative stay while the First Circuit considered its stay request. Specifically, the administrative stay provided that the "District Court's orders are hereby administratively stayed pending disposition of the motion for a stay pending appeal in the United States Court of Appeals for the First Circuit in case No. 25-2089 or further order of the undersigned or of the Court." The administrative stay was to terminate "forty-eight hours after the First Circuit's resolution of the pending motion, which the First Circuit is expected to issue with dispatch."

25. On November 8, 2025, following the Supreme Court's entry of the administrative stay, Conduent contacted NJDHS to advise that USDA-FNS had only released approximately 65%

6

of NJDHS's full benefits (with the full benefits amount being approximately $158,000,000) to New Jersey's line of credit, which supports Conduent's daily reconciliation with the federal government for benefits expenditure. However, USDA-FNS did not advise Conduent as to the exact amount that was released.

26. Conduent also advised that, because USDA-FNS had only authorized the reduced amount of benefits, once benefit expenditure exceeded this available line of credit, Conduent would no longer be able to reimburse retailers.

27. After learning of these issues from Conduent, NJDHS began monitoring benefit use and expenditures throughout the day. As of approximately 12:30 p.m. on Sunday, November 9, 2025, NJDHS was aware that approximately $30 million in benefits had been expended.

28. On November 8, at 10:00 p.m. Eastern Standard Time, USDA-FNS sent out yet another communication through the Regional FNS Office. Contrary to the November 8, 2025 Guidance confirming that FNS was authorizing full benefits, this new Guidance advised State SNAP Administrators that, in light of the Supreme Court's administrative stay, "[p]ending any explicit direction to the contrary from Food and Nutrition Service (FNS), States must not transmit full benefit issuance files to EBT processors. Instead, States must continue to process and load the partial issuance files that reflect the 35 percent reduction of maximum allotments detailed in the November 5 guidance."

29. The November 8, 2025 Guidance also warned States that "[t]o the extent States sent full SNAP payment files for November 2025, this was unauthorized. Accordingly, States must immediately undo any steps taken to issue full SNAP benefits for November 2025. Please advise the appropriate FNS Regional Office representative of steps taken to correct any actions taken that do not comply with this memorandum."

30. Lastly, the November 8, 2025 Guidance provided that "[p]er 7 CFR 271.7(h), failure to comply with this memorandum may result in USDA taking various actions, including cancellation of the Federal share of State administrative costs and holding States liable for any overissuances that result from the noncompliance." In short, USDA is threatening the States with millions of dollars of penalties.

31. In light of the November 8, 2025 Guidance threatening to impose millions of dollars of penalties on New Jersey for acting consistently with the decision and Order in the District of Rhode Island case and with USDA-FNS's own November 7, 2025 communication making clear that full issuances would be authorized, NJDHS has been working to figure out whether it is possible to comply with USDA-FNS's newest directive to "undo any steps taken to issue full SNAP benefits for November 2025."

32. At present, after conversation with Conduent, NJDHS is unaware of feasible ways to timely and effectively comply with November 8, 2025 Guidance.

33. Because there is no way to recall the benefits that have already been loaded on EBT cards and expended at retailers, any attempt by NJDHS to cancel the full issuances that were already sent to Conduent and instead send partial issuances in accordance with the November 8, 2025 Guidance will result in *duplicate* benefits being sent to households, because NJDHS cannot quickly or easily calculate the delta between what households have spent and the amount they would have received under USDA-FNS's second set of Reduced Allocation tables.

34. Furthermore, because USDA-FNS's November 8, 2025 Guidance threatens to charge NJDHS for any overages that have been expended, or to cancel its administrative funding, this means that New Jersey may not only be held liable for millions of dollars in expended benefits,

but also that it could lose critical funding for SNAP administrative costs if it attempts to comply with "undo[ing]" the full issuances and sending only the 65% issuances.

35. Moreover, even if there was a way to account for the above problems, it would take approximately one week before NJDHS and Conduent could both feasibly cancel the full November 2025 issuances and replace them with the partial issuances based on the Reduced Allotment table.

36. In the alternative, although NJDHS understands that Conduent could deactivate the EBT cards at the point of sale, this would mean that all consumers—even those whose households have not yet expended the 65% benefit amount permitted under the second set of Reduced Allocation tables—would find themselves unable to move forward with any purchases. This action would also prevent households who were carrying any benefits, including state-funded supplemental benefits or carryover benefits from a prior month, from using those cards.

37. In addition to depriving households of the actual ability to expend much-needed benefits, this action would also cause chaos on the ground. Although EBT balances would reflect the existence of benefits on the cards, those cards would now no longer work at the point of sale, meaning that retailers would bear the responsibility of turning confused consumers away at the register.

38. And, even if NJDHS authorized Conduent to take this drastic step, USDA-FNS could *still* hold New Jersey liable for any benefits expended by individual households beyond the 65% benefit amount authorized by the November 8, 2025 Guidance.

39. NJDHS's and New Jersey's exposure increases every minute that passes as New Jerseyans use their EBT cards to purchase necessary and critical food supplies, particularly as these expenditures inch closer and closer to USDA-FNS's maximum authorization of 65% of benefits.

9

40. Moreover, if NJDHS were to attempt now to cancel the full November 2025 issuances and replace them with the partial issuances based on the Reduced Allotment table, it would be stuck in the untenable situation of trying to further undo that action if the First Circuit or the Supreme Court denies any application to stay the District of Rhode Island's November 6 decision.

41. Any attempt to comply with USDA's November 8 Guidance would not only be operationally infeasible, but also inflict serious harm on New Jersey's residents.

42. NJDHS and Plaintiffs desperately require the immediate intervention of this Court to ensure that its financial and administrative exposure does not continue to mount, and that it is not forced to take the drastic step of cutting EBT cards at the point of service just as New Jerseyans received desperately needed relief in the form of USDA-FNS's November 7, 2025 Guidance authorizing full benefits.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of November, 2025, in Trenton, NJ.

*Sarah Adelman*

_____
Sarah Adelman
Commissioner
New Jersey Department of Human Services